PATRICK E. HIGGINBOTHAM, Circuit Judge:
A jury convicted Appellant James Cecil Holley, Jr. of conspiracy to commit a drug trafficking crime, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime. Holley now challenges all three convictions, and we AFFIRM.
I.
On March 6, 2008, Officer Travis Put-man received information from a confidential informant that Holley was distributing large quantities of marijuana in the Dallas area. Putman conducted a records search and determined that Holley was associated with a house located at 6203 Gray Wolf Trail. A different officer traveled to the house on two separate occasions and used a trained canine to “conduct[] a free-air sniff of ... [the] garage door.” On both occasions, the dog “alerted to the presence of the odor of an illegal drug while sniffing the garage door.” Based largely upon the canine alerts, Putman sought and received a search warrant for the Gray Wolf Trail house. During the search, officers discovered $9,990 in cash, a money counter, digital scales, ten pounds of marijuana, a marijuana seed, two trays of drying marijuana, a Heckler and Koch (“H&K”) .45 caliber handgun, two loaded magazines, a drug ledger, and a utility bill for a house on Winterwood Lane in the name of Justin Dismore. Holley was present at the time of the search and seated a short distance from the handgun.
After locating the utility bill, officers began to investigate the house on Winter-wood Lane. As with the Gray Wolf Trail house, an officer traveled to the Winter-wood Lane house and used a trained canine to conduct a “free-air sniff’ of the “garage door.” The dog again “alerted to the presence of the odor of an illegal drug while sniffing the garage door.” Based upon this alert and the utility bill found at the Gray Wolf Trail house, the officers obtained a search warrant for the house on Winterwood Lane. That search resulted in the discovery of a large hydroponic marijuana cultivation operation, 263 marijuana plants, and evidence linking Holley to the house. In 2009, investigators searched two other houses connected with Holley, one on McShann Road and one on Harvest Hill Road. Holley and Blake Huggins were present when officers executed the search warrant for the McShann Road house. In *325 side the house, officers discovered another hydroponic marijuana cultivation operation, 273 marijuana plants, 16 bags of hydroponic marijuana (with a total weight of around 11 pounds), a digital scale, a drug ledger, evidence that Holley was living there, a utility bill for the property in the name of Louis Lee, and a sales receipt in Lee’s name. During the search of the Harvest Hill Road house, officers learned that it was being occupied by Huggins and Michael Strickland. In Huggins’s room, officers found a schematic drawing for a hydroponic marijuana cultivation system and a fist of items needed to build the system.
On May 28, 2014, a federal grand jury in the Eastern District of Texas returned a superseding indictment charging Holley with three counts: one count of conspiracy to commit a drug trafficking crime in violation of 21 U.S.C. § 846, one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Prior to trial, Holley moved to suppress the evidence discovered during the searches of the Gray Wolf Trail, Winterwood Lane, and McShann Road houses. Holley argued, in relevant part, that the dog sniffs used to obtain the warrants for the Gray Wolf Trail and Win-terwood Lane houses violated the Fourth Amendment, relying principally on the Supreme Court’s decision in Florida v. Jar-dines.[1] The district court denied all three motions to suppress.
Holley’s case was tried to a jury from June 3-6, 2014. The Government presented testimony from one of Holley’s former customers, Meina Azez, and two of Holley’s former co-defendants who pleaded guilty and agreed to cooperate, Justin Brown and Jason Sirovica. Brown testified that he bought large quantities of marijuana from Holley on a regular basis. At some point, he started his own grow operation using seeds extracted from marijuana purchased from Holley. Brown explained that two individuals helped him with his grow operation, Corey Armstrong and Jason Si-rovica. Brown elaborated that a third individual, Nick Neighbors, assisted both him and Holley. Brown also recounted that Holley and his associate, Michael Strickland, unexpectedly stopped by his “grow room” on one occasion. Holley and Strickland noticed that Brown’s plants were healthy and producing well. As a result, they asked “what chemicals [he] was using,” and Brown told them. Sirovica testified consistently with Brown. He confirmed that he and Brown used to buy marijuana from Holley and started growing their own. Sirovica testified that he and Brown worked together, although they both grew marijuana separately as well. He added that Strickland — who is an electrician — helped him wire one of his “marijuana grows.” The Government established through other witnesses that: (1) the Win-terwood Lane house was leased in Holley’s name; (2) Strickland was listed as the emergency contact on the lease for the Winterwood Lane house; and (3) the H&K handgun found at the Gray Wolf Trail house had been manufactured in Germany.
At the close of the Government’s case, Holley moved for a judgment of acquittal. Following a thorough review of the evidence, the district court denied this motion. The jury subsequently returned a guilty verdict on all counts. Holley renewed his motion for a directed verdict, but the district court again denied it. In March 2015, the district court sentenced Holley to 185 months of imprisonment fol *326 lowed by 8 years of supervised release. Holley timely appealed to this Court.
II.
On appeal, Holley presses four arguments: (1) the district court erred in. denying the motions to suppress; (2) there was insufficient evidence to convict on Count One because the Government proved only that he conspired to distribute marijuana, not marijuana plants; (3) there was insufficient evidence to convict on Count Three because the Government proved only that he used a gun to further a conspiracy to distribute marijuana, not a conspiracy to distribute marijuana plants; and (4) there was insufficient evidence to convict on Counts Two and Three because the Government proved only that the H&K handgun moved in foreign commerce, not interstate commerce.
A.
Holley argues that the district court erred in denying all three motions to suppress. As below, he urges that the dog sniffs of the Gray Wolf Trail and Winter-wood Lane houses violated the Fourth Amendment under the Supreme Court’s recent decision in Florida v. Jardines. He further argues that the McShann Road warrant was fruit of the poisonous tree because it was based in part on these searches. The Government responds that the dog sniffs did not violate the Fourth Amendment. Alternatively, the Government argues that the good faith exception applies. We start with the good faith exception. For purposes of our analysis, we assume without deciding that the dog sniffs violated the Fourth Amendment.
In his briefing, Holley argues that “Leon is not applicable in the instant case because the warrants were based upon the preceding unconstitutional and warrantless dog sniff searches.”[2] That is, Holley urges that the Leon good faith exception is categorically inapplicable when a warrant is Obtained using tainted evidence-or is fruit of the poisonous tree. This position is inconsistent with this Court’s recent decision in United States v. Massi.[3] In Massi, this Court held that evidence seized pursuant to warrant is admissible-even if the warrant was the product of an illegal search-if two requirements are met:
(1) the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant must be “close enough to the line of validity” that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct, and (2) the resulting search warrant must have been sought and executed by a law enforcement officer in good faith as prescribed by Leon.[4]
There is no allegation that the officers did not seek the Gray Wolf Trail and Winter-wood Lane warrants in good faith. As a result, the only question is whether the dog sniffs were “close enough to the line of validity” that an objectively reasonable officer would not have realized that the resulting warrants were tainted.
Although the issue is close, we are persuaded that the good faith exception applies. The disputed dog sniffs took place in 2008. At that point in time, this Court had issued only one decision, albeit an unpublished one, that addressed a similar *327 search, United States v. Tarazon-Silva.[5] In Tarazon-Silva, this Court upheld a “dog-sniff of the outer edge of the [defendant’s] garage and the dryer vent on the exterior wall of the house” because it “did not occur on protected curtilage.”[6] This outcome was consistent with several other pre-Jardmes decisions addressing dog sniffs of garage doors.[7] Indeed, Holley does not point us to a single pre-Jardines decision that invalidated a search factually similar to those under review. Even if not binding or conclusive, this uniform case law demonstrates that the dog sniffs were “close enough to the line of validity” that an objectively reasonable officer would not have realized that the Gray Wolf Trail and Winterwood Lane warrants were tainted. In these circumstances, “[t]o suppress the evidence derived from th[ese] warrant[s] would not serve the interest of deterring future constitutional violations.”[8] We affirm the denial of the three motions to suppress.
We do not hold-as the dissent suggests-’that “a search is reasonable so long as no court has explicitly found a search under identical circumstances to be unreasonable.” Prior to Jardines, thirteen different federal and state judges (including three members of this Court) concluded that a dog sniff of a garage door did not violate the Fourth Amendment. Although these cases necessarily involved different facts, their uniformity refutes the dissent’s assertion that a reasonable officer should have realized that a dog sniff of a garage door was categorically unconstitutional. Indeed, even now, it is unclear whether a dog sniff of a garage door is unconstitutional. The dissent urges that Florida v. Jardines[9] and Kyllo v. United States[10] inexorably lead to this conclusion. But the dissent ignores cases holding that a driveway is not part of the home’s curtilage[11] and a dog is not the type of “sense-enhancing” tool discussed in Kyllo.[12] To deny use of the evidence here would ill serve the purposes of the exclusionary rule.
B.
Count One alleged that Holley conspired “with other persons known and unknown to the United States Grand Jury, to knowingly and intentionally possess with the intent to manufacture and distribute, and to manufacture and distribute 100 or more marijuana plants, a violation of 21 U.S.C. § 841(a)(1) ... [i]n violation of 21 U.S.C. § 846.” Holley concedes that “there was sufficient evidence to convict [him] of conspiring with the intent to distribute and *328 distributing cultivated marijuana.”[13] But he urges there was not sufficient evidence to convict him of the offense charged in the indictment-conspiring to distribute marijuana plants. That is, Holley argues that the Government only proved that he conspired to distribute marijuana that was harvested from the plants discovered in his grow houses, not the plants themselves.
Holley’s position is unconvincing. By its plain text, there are six different ways to violate § 841(a): (1) manufacturing a controlled substance; (2) distributing a controlled substance; (3) dispensing a controlled substance; or possessing with the intent to (4) manufacture, (5) distribute, or (6) dispense a controlled substance. Count One alleged that Holley conspired to violate § 841(a) in four of these six ways: he conspired to manufacture marijuana plants; he conspired to distribute marijuana plants; he conspired to possess with the intent to manufacture marijuana plants; and he conspired to possess with the intent to distribute marijuana plants. Although the indictment listed these different ways of violating § 841(a) using “and” rather than “or,” the Government still only had to prove that Holley conspired to violate the statute in one of these four possible ways.[14]
The Supreme Court has instructed that the “general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as [Holley’s] indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged.”[15] Put another way, Holley’s sufficiency challenge fails if there was sufficient evidence that he entered a conspiracy to either manufacture marijuana plants, distribute marijuana plants, possess with the intent to manufacture marijuana plants, or possess with the intent to distribute marijuana plants.[16] There undoubtedly was. Though Holley contends that he did not conspire to distribute marijuana plants, there is ample evidence that he conspired to manufacture marijuana plants. At trial, the Government introduced evidence that several different people assisted Holley with his grow operation: (1) Nick Neighbors provided unspecified assistance; (2) Justin Brown provided advice about chemicals; (3) Michael Strickland was the emergency contact for one of the grow houses; (4) Justin Dismore put his name on the utilities for one of the grow houses; (5) Louis Lee put his name on the utilities for a different grow house; and (6) Blake Huggins was found at one of the grow houses and possessed a schematic for a hydroponic marijuana cultivation system. The Government had to establish only that Holley conspired with one of these individuals to prove a violation of § 846.[17] “[Considering the evidence and all reasonable inferences in the light most favorable to the prosecution,”[18] a rational jury could have concluded that Holley conspired with all six.
*329 C.
Count Three alleged that Holley possessed the H&K handgun “in furtherance of a drug trafficking crime ... to wit: conspiracy to possess with intent to distribute and manufacture, distribute, and manufacture marijuana plants as alleged in Count One of th[e] Superseding Indictment” in violation of 18 U.S.C. § 924(c). Holley appears to concede that he possessed a firearm in furtherance of a drug trafficking crime-but not the one alleged in the indictment. Similarly to Count One, Holley acknowledges that the Government presented evidence that he “possessed the HK .45 caliber handgun ... in connection with possession and selling harvested marijuana.”[19] But he argues that “the government presented absolutely no evidence that [he] possessed the handgun when allegedly conspiring to posses[s] with intent to distribute and manufacture, distribute, and manufacture marijuana plants.”[20]
The same principles apply as above. Though Count Three was pleaded conjunc-tively, the Government had four different routes to a conviction: (1) Holley possessed the handgun “in furtherance of’ a conspiracy to manufacture marijuana plants; (2) Holley possessed the handgun “in furtherance of’ a conspiracy to distribute marijuana plants; (3) Holley possessed the handgun “in furtherance of’ a conspiracy to possess with the intent to manufacture marijuana plants; or (4) Holley possessed the handgun “in furtherance of’ a conspiracy to possess with the intent to distribute marijuana plants. Because the jury returned a general verdict, it “stands if the evidence is sufficient with respect to any one of’ these four alternative ways of violating § 924(c).[21] Therefore, the relevant question is whether the Government presented sufficient evidence that Holley possessed a handgun “in furtherance of’ one of the four drug trafficking conspiracies alleged in Count One.
We conclude that the Government presented sufficient evidence that Holley possessed the H&K handgun “in furtherance of’ a conspiracy to manufacture marijuana plants. This Court has held that evidence that a firearm is being used to protect a drug operation against robbery is sufficient to support a conviction under § 924(c).[22] We have delineated eight factors that help distinguish a firearm that is being used to protect a drug operation from one that is merely present at the scene of a drug crime:
the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.[23]
Almost all of these factors weigh against Holley: (1) Holley was “engaged in significant drug activity”;[24] (2) the handgun was found a short distance from Holley; (3) the handgun is large caliber and .semi-auto *330 matic;[25] (4) the handgun may have been stolen;[26] (5) Holley is a convicted felon, so the possession was illegal; (6) the handgun was found in the same case as two loaded magazines and a box of ammunition; (7) the handgun was found on the same shelf as $9,990 in drug profits and in the same house as ten pounds of marijuana and two trays of drying marijuana;[27] and (8) the handgun was found during the search of a house involved in Holley’s grow operation. As a result, a rational jury could have readily concluded that Holley used the H&K handgun to protect his marijuana manufacturing operation.
Holley’s only reply is that the handgun “was not located at the grow house and there is no indication that it was used to protect the marijuana plants at the grow house.”[28] This' argument is unpersuasive. The evidence at trial established that Holley was the mastermind of a large grow operation involving several houses. Although the handgun was not found at a grow house, it would have been reasonable for the jury to infer that Holley carried the gun when he traveled to the grow houses and used it to protect the larger grow operation. This is especially true because the police found evidence at the Gray Wolf Trail house connecting it to the grow houses, including a utility bill for the Winter-wood Lane house and drying marijuana.[29] Accordingly, “considering the evidence and all reasonable inferences in the light most favorable to the prosecution,”[30] there was sufficient evidence to support Holley’s § 924(c) conviction.
D.
Counts Two and Three both alleged that Holley possessed a firearm “affecting interstate commerce.” Holley contends that the evidence presented at trial was insufficient to establish that the H&K handgun “affect[ed] interstate commerce” because it demonstrated only that the handgun moved in foreign commerce — not interstate commerce. As Holley concedes, this argument is foreclosed by prior decisions of this Court.[31]
III.
For the reasons stated above, we AFFIRM.

. — U.S.-, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).

. Holley's Reply Brief at 12.

. 761 F.3d 512 (5th Cir. 2014).

.Id. at 528.

. 166 F.3d 341 (5th Cir. 1998) (unpublished table decision).

. Id. at *1.

. See, e.g., United States v. Vasquez, 909 F.2d 235, 238 (7th Cir. 1990); United States v. Hogan, 122 F.Supp.2d 358, 367-69 (E.D.N.Y. 2000); Stauffer v. State, No. 14-03-00193-CR, 2004 WL 253520, at *2-3 (Tex. Ct. App. Feb. 12, 2004) (unpublished); Smith v. State, No. 01-02-00503-CR, 2004 WL 213395, at *3-4 (Tex. Ct. App. Feb. 5, 2004) (unpublished).

. Massi, 761 F.3d at 532 (citing United States v. Leon, 468 U.S. 897, 919-20, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

. -U.S.-, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).

. 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001).

. See United States v. Beene, 818 F.3d 157, 162-63 (5th Cir. 2016).

. See Illinois v. Caballes, 543 U.S. 405, 409-10, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); see, e.g., United States v. Shuck, 713 F.3d 563, 568-69 (10th Cir. 2013); United States v. Scott, 610 F.3d 1009, 1016 (8th Cir. 2010).

. Holley's Opening Brief at 28.

. "It is well-established in this Circuit that a disjunctive statute may be pleaded conjunctively and proved disjunctively.” United States v. Haymes, 610 F.2d 309, 310 (5th Cir. 1980) (per curiam); see also, e.g., United States v. Hoeffner, 626 F.3d 857, 863-64 (5th Cir. 2010) (per curiam); United States v. Pigrum, 922 F.2d 249, 253 (5th Cir. 1991).

. Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); see also Griffin v. United States, 502 U.S. 46, 56-57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

. See, e.g., United States v. Durman, 30 F.3d 803, 810 (7th Cir. 1994); United States v. Richman, 600 F.2d 286, 298 (1st Cir. 1979).

. See United States v. Scott, 48 F.3d 1389, 1392-93 (5th Cir. 1995).

. United States v. Vargas-Ocampo, 747 F.3d 299, 303 (5th Cir. 2014) (en banc).

. Holley’s Opening Brief at 32.

. Id.

. Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

. United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir.), as amended on denial of reh’g en banc, 226 F.3d 651 (5th Cir. 2000).

. Id. at 414-15; see also United States v. Charles, 469 F.3d 402, 406 (5th Cir. 2006).

. See United States v. Yanez Sosa, 513 F.3d 194, 201 (5th Cir. 2008).

. See United States v. McGehee, 672 F.3d 860, 872 (10th Cir. 2012) C‘[T]he gun was ... a 'large caliber semi-automatic which could [be] easily concealed.’ ... Our cases suggest that such handguns are frequently used in similar drug-trafficking crimes, where the offender needs protection because of the high-stakes, dangerous nature of the offense.” (third alteration in original)).

. The gun was originally sold to a woman uninvolved in the drug conspiracy. At trial, she testified that she left the gun with her ex-husband. She did not know if her ex-husband — who was a friend of Holley — gave the gun to him.

. See United States v. Molinar-Apodaca, 889 F.2d 1417, 1424 (5th Cir. 1989); see also United States v. Young, 340 Fed.Appx. 226, 229 n.4 (5th Cir. 2009).

. Holley’s Reply Brief at 15.

. Officer Putman testified that ”[t]he only time, in [his] experience, [he has] ever seen dried-up leaves are actually at a marijuana grow.”

. United States v. Vargas-Ocampo, 747 F.3d 299, 303 (5th Cir. 2014) (en banc).

. See United States v. Guidry, 406 F.3d 314, 318 & n.3 (5th Cir. 2005) ("The interstate commerce element of a § 922(g)(1) charge is satisfied where the government demonstrates that the firearm was manufactured out of state.”); United States v. Young, 730 F.2d 221, 224-25 (5th Cir. 1984).