

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1641-15

**BRADLEY RAY McCLINTOCK, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

YEARY, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, RICHARDSON, KEEL and WALKER, JJ., joined. ALCALA, J., filed a dissenting opinion. NEWELL, J., did not participate.

### O P I N I O N

This case involves the proper construction of Article 38.23(b) of the Texas Code of Criminal Procedure, the statutory good-faith exception to our statutory exclusionary rule. TEX. CODE CRIM. PROC. art. 38.23(b). We have reviewed this case once before on discretionary review. *McClintock v. State*, 444 S.W.3d 15 (Tex. Crim. App. 2014). At that time, we remanded it to the court of appeals to allow that court to address, in the first

instance, whether the United States Supreme Court's recent interpretation of the court-made good-faith exception to the federal exclusionary rule in *Davis v. United States*, 564 U.S. 229 (2011), should have any application in the construction of our own statutory good-faith exception to our statutory exclusionary rule. We observed that a remand was "the proper disposition" of our first discretionary review because the answer was "not remotely clear cut" and "our resolution of the issue . . . would benefit from a carefully wrought decision from the court of appeals." 444 S.W.3d at 20-21. The court of appeals has now issued its opinion. *McClintock v. State*, 480 S.W.3d 734 (Tex. App.—Houston [1st Dist.] 2015). The State again petitioned this court for discretionary review, which we granted.

## BACKGROUND

We gave a detailed recital of the facts in our first opinion in this case. *McClintock*, 444 S.W.3d at 16-17. We need not repeat them to that level of specificity here. Suffice it to say that Appellant lived in an upstairs residence above a business. Access to his residence could be gained through a stairway at the back of the building. Police took a drug-sniffing dog to Appellant's door at the top of that stairway, where the dog alerted to the presence of drugs. This fact was included in a warrant affidavit upon which a warrant to search the residence issued. Charged with possession of a felony amount of marijuana, Appellant filed a motion to suppress the contraband, contending that it had been obtained under a search warrant that was not supported by probable cause. He claimed that the affidavit in support of the search warrant contained illegally obtained information, and that, redacting that information from

the warrant affidavit, the remaining information failed to supply probable cause. Specifically, he argued that the police had conducted an illegal search at the door to his apartment using a drug-sniffing dog, and then incorporated that ill-gotten information into the search warrant affidavit. The trial court denied the motion, expressly holding that the police dog had not invaded the curtilage of Appellant's home at the time it alerted to the presence of contraband, and that the use of a drug dog therefore did not constitute a search for Fourth Amendment purposes. Appellant then pled guilty to a reduced charge, preserving his right to appeal the adverse ruling on his motion to suppress.

While the case was pending on appeal, the United States Supreme Court decided *Florida v. Jardines*, 133 S.Ct. 1409 (2013). On the strength of that opinion, the court of appeals reversed Appellant's conviction, holding that the canine drug sniff had in fact constituted an unconstitutional search of the curtilage of Appellant's residence,[1] and that, excluding the dog's contraband alert from the search warrant affidavit, there was no probable cause to support the warrant. *McClintock v. State*, 405 S.W.3d 277 (Tex. App.—Houston [1st Dist.] 2013). The State filed a petition for discretionary review. For the first time, the State argued that, even accepting that the dog sniff was illegal under *Jardines*, the court of appeals erred to hold that the trial court should have excluded the product of the search warrant.

---

[1] On similar facts, this Court recently held the same. *See State v. Rendon*, 477 S.W.3d 805, 811 (Tex. Crim. App. 2015) ("Applying the Supreme Court's reasoning in *Jardines* to the facts of this case, we conclude that, by bringing a drug-detection dog directly up to appellee's front door for the purpose of conducting a canine-narcotics sniff, the officers physically intruded upon the curtilage of appellee's home in a manner that exceeded the scope of any express or implied license, and any evidence obtained as a result of that trespass was obtained in violation of the Fourth Amendment.").

Invoking the Supreme Court's opinion in *Davis*, the State argued that, because the police relied upon then-binding legal precedent holding that the dog sniff did *not* constitute a search for Fourth Amendment purposes, they committed no malfeasance and should not have to suffer the exclusion of evidence under either the Fourth Amendment exclusionary rule or the statutory exclusionary rule embodied in Article 38.23(a) of the Texas Code of Criminal Procedure.[2] We remanded the cause to the court of appeals to address this contention in the first instance. *McClintock v. State*, 444 S.W.3d 15, 20-21 (Tex. Crim. App. 2014).

On remand, the justices in the court of appeals disputed the proper scope of Article 38.23(b)'s good-faith exception to our statutory exclusionary rule.[3] The majority held that the language of the exception plainly limits its application to "evidence obtained" by virtue of

---

[2] Subsection (a) of Article 38.23 reads:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. art. 38.23(a).

[3] Subsection (b) of Article 38.23 reads:

> (b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issue by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. art. 38.23(b).

"reliance upon" a "warrant" that is "based on probable cause." *McClintock*, 480 S.W.3d at 742-44. It observed that the warrant upon which police relied in this case was *not* supported by probable cause because the affidavit undergirding the warrant contained information that *itself* was tainted by an illegality. *Id*. On its face, the majority explained, Article 38.23(b) does not apply to excuse this underlying illegality, and so, the illegally obtained information may not be included in the probable cause calculation. *Id*. The majority went on to say that, excluding that illegally obtained information from the warrant affidavit, insufficient "probable cause" remained to support the warrant. *Id*. Therefore, the majority concluded, the good-faith exception embodied in Subsection (b) did not apply, exclusion of the contraband was appropriate under Subsection (a), and the trial court erred in failing to suppress the evidence. *Id*.

The dissenting justice disagreed. *Id*. at 744-54 (Keyes, J., dissenting). She believed it would be just as faithful to the language of the statutory exception to hold that, so long as the illegal conduct that infected the acquisition of the information that went into the warrant affidavit was *itself* undertaken in good faith, then the evidence was "obtained . . . in good faith reliance upon a warrant . . . based on probable cause[,]" and evidence obtained pursuant to the warrant need not be excluded. *Id*. That is to say, so long as the police had a good-faith basis to believe, under binding legal precedent at the time, that they had lawfully obtained the information included in the warrant affidavit, then the exclusionary provisions of Article 38.23(a) should not apply. *Id*. Such an interpretation, Justice Keyes believed, would bring the

statutory exception in line with the Supreme Court's gloss on the federal exclusionary rule announced in *Davis*. *Id*.

We granted the State's second petition for discretionary review in order to resolve this dispute and clarify the reach of Article 38.23(b). Boiled down, the question is this: How should Article 38.23(b) apply, if at all, when the warrant affidavit supplies probable cause but that probable cause appears to be tainted by a prior illegality?

**ANALYSIS**

**Statutory Construction**

Prior to the advent of Article 38.23, this Court had recognized no state exclusionary remedy in Texas. *Welchek v. State*, 93 Tex. Crim. 271, 247 S.W. 524 (1922). We still have not fashioned a judicial exclusionary rule. The scope of the current state exclusionary rule is, therefore, purely a function of our construction of the statute. While Article 38.23 to some extent "mirrors" the federal exclusionary rule, *Miles v. State*, 241 S.W.3d 28, 32 (Tex. Crim. App. 2007), they are not identical, and we are not free to graft additions or alterations to the statute at our pleasure, in the name of policy, that are plainly inconsistent with the text. The proper scope of Article 38.23(a)'s exclusionary rule is a question of statutory construction. *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996); *Wehrenberg v. State*, 416 S.W.3d 458, 468-70 (Tex. Crim. App. 2013). The proper scope of any *exception* to the exclusionary rule, such as Article 38.23(b)'s good-faith exception, is likewise a question of statutory construction. *See Baker v. State*, 956 S.W.2d 19, 23 (Tex. Crim. App. 1997)

("[W]hether a recognized exception to a federal exclusionary rule also applies to Article 38.23 depends upon whether the exception is consistent with the language of Article 38.23.").

The Supreme Court's decision in *Davis* dealt with the good-faith exception to the federal, court-made exclusionary rule. The question in *Davis* was whether to apply the federal exclusionary rule "when police conduct a search in compliance with binding precedent that is later overruled." 564 U.S. at 232. The Supreme Court concluded that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id*. at 241. Nothing about *Davis*'s holding with respect to the federal exclusionary rule necessarily dictates how Article 38.23(b) should be construed. Whether Article 38.23(b)'s good-faith exception should apply to the facts of the instant case is purely a question of legislative intent. Consequently, we must decide whether, when the Legislature provided that the good-faith exception should apply only to excuse the illegal acquisition of evidence when the evidence was obtained in reliance upon a warrant "based upon probable cause[,]" it intended that any information contributing to that probable cause that was *itself* obtained by police misconduct should be discounted from the probable cause assessment.

When we construe Article 38.23, as with any statute, "[i]n divining legislative intent, we look first to the language of the statute[,]" and "[w]hen the meaning is plain, we look no further." *Daugherty*, 931 S.W.2d at 270. It is plain enough from the language of Article

38.23(b) that, before its good-faith exception to Subsection (a)'s exclusionary rule may apply, there must be (1) objective good-faith reliance upon (2) a warrant (3) issued by a neutral magistrate that is (4) based upon probable cause. With respect to the fourth requirement, we long ago declared that "[t]he plain wording of Art[icle] 38.23(b) requires an initial determination of probable cause." *Curry v. State*, 808 S.W.2d 481, 482 (Tex. Crim. App. 1991) (citing *Gordon v. State*, 801 S.W.2d 899, 912-13 (Tex. Crim. App. 1990)); *see also* George E. Dix & John M. Schmolesky, 40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 7.67, at 395 (3d ed. 2011) ("If probable cause is found to be lacking, Article 38.23—although not federal constitutional considerations—requires that the evidence be excluded regardless of whether the officer relying on the warrant believed that it had been issued on facts sufficient for probable cause.").[4]

Far less plain from the face of the statute is what the legislative intent may have been with respect to what may permissibly go into the assessment of "probable cause."[5] Did the Legislature mean to incorporate nothing more than the common-place definition of that term, namely, that "under the totality of circumstances presented to the magistrate, there is at least a 'fair probability' or 'substantial chance' that contraband or evidence of a crime will be

---

[4] Moreover, it seems plain enough that Article 38.23(b) does not provide a good faith exception for an illegal warrantless search or seizure perpetrated by the police, or for any illegal search or seizure perpetrated by an "other person" for purposes of Article 38.23(a).

[5] *See Yazdchi v. State*, 428 S.W.3d 831, 847 (Tex. Crim. App. 2014) (Price, J., concurring) ("The extent to which statutory language may be plain on its face or ambiguous is sometimes a function of the question that is brought to bear. A given statutory provision will sometimes clearly answer one question but remain hopelessly insoluble with respect to another.").

found at the specified location"? *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). There is no question that the totality of circumstances presented to the magistrate in this case, *including* the results of the canine drug sniff, supplied ample probable cause. Alternatively, did the Legislature's understanding of "probable cause" embrace—as the majority in the court of appeals in this case tacitly assumed—the Fourth Amendment's "fruit of the poisonous tree" doctrine to the effect that illegally obtained information must ordinarily be disregarded in determining whether a warrant affidavit has supplied sufficient information to satisfy this common-place definition of probable cause?[6] In deciding whether a warrant is "based on probable cause" for purposes of implementing Article 38.23(b), is it necessary for a court that is reviewing the magistrate's determination *categorically* to strike any information in the warrant affidavit that was itself illegally obtained? Does it matter whether the prior illegality was itself subject to a claim that the officer acted in good faith? The federal courts have disagreed about the proper resolution

---

[6] We have said that, as a principle of Fourth Amendment law, "[a] search warrant may not be procured lawfully by the use of illegally obtained information." *State v. Cuong Phu Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015) (citing *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980), *overruled on other grounds by Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989)). This is nothing more than a particular application of the well-known "fruit-of-the-poisonous-tree" doctrine. Wayne R. LaFave, 6 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4(f) (5th ed. 2012); George E. Dix & John M. Schmolesky, 40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 9:2 (3d ed. 2011). It is not altogether clear from the face of the statute, however, that the Legislature necessarily meant to incorporate this Fourth Amendment principle into its definition of "probable cause" in the context of Article 38.23(b), as the court of appeals apparently believed. *See McClintock*, 480 S.W.3d at 742 ("The warrant [affidavit] in this case did not contain sufficient lawfully acquired information to clearly establish probable cause without the dog-sniff evidence.").

of this issue as a matter of Fourth Amendment jurisprudence.[7] Article 38.23(b) does not expressly address, much less plainly resolve, this complicated question.

How do we fill the statutory gap? Our approach in the past, at least when confronting the language of Article 38.23(a), has been to assume that the Legislature intended to incorporate any exception to the federal exclusionary rule from the Fourth Amendment case law that we have found to be "consistent with" the statutory language, even if not expressly spelled out there. *Baker*, 956 S.W.2d at 23. Thus, we have declared the Fourth Amendment doctrines of "attenuation of taint" and "independent source" to apply under Article 38.23(a), because we found them to be consistent with the notion that evidence that fits within either of these doctrines was not "obtained" illegally, as the statute requires as a predicate to exclusion. *Johnson v. State*, 871 S.W.2d 744, 750-51 (Tex. Crim. App. 1994); *Wehrenberg*, 416 S.W.3d at 473. By contrast, we found the doctrine of inevitable discovery not to be consistent with the statutory language of Article 38.23(a), because that doctrine *assumes* that evidence has been "obtained" illegally, and would admit it anyway. *Daugherty*, 931 S.W.2d at 271. In examining the scope of Article 38.23(b)'s good-faith exception to Article 38.23(a)'s exclusionary rule, therefore, we should similarly inquire whether such principles

---

[7] For a discussion of the conflicting federal case law with respect to whether to extend the good-faith exception to cases involving an illegal predicate search, *see* Andrew Z. Lipson, *Note: The Good Faith Exception as Applied to Illegal Predicate Searches: A Free Pass to Institutional Ignorance*, 60 HASTINGS L.J. 1147, 1156-66 (May 2009), and Alyson M. Cox, *Note: Does It Stay, or Does It Go?: Application of the Good-Faith Exception When the Warrant Relied Upon Is Fruit of the Poisonous Tree*, 72 WASH. & LEE L. REV. 1505, 1515-33 (Summer 2015). Those cases will be discussed in the text and in footnotes, *post*.

as have been recognized in the case law construing the scope of the "good-faith" exception to the federal exclusionary rule are accommodated by the statutory language.

### The Good Faith Doctrine and Fruit of the Poisonous Tree

The United States Supreme Court has already provided clear guidance when it comes to exclusionary-rule issues such as attenuation of taint,[8] independent source,[9] and inevitable discovery.[10] It is a relatively straightforward task for this Court to decide whether Article 38.23 can accommodate those doctrines as definitively articulated by the Supreme Court. But the Supreme Court has yet to address the question of how the fruit-of-the-poisonous-tree doctrine should interact with the good-faith exception established by *United States v. Leon*, 468 U.S. 897 (1984).[11] The lower federal courts are not entirely of one mind on this question, and it is a challenge to discern exactly what the state of the law is under the federal exclusionary rule.

The Ninth, Tenth, and Eleventh Circuits have taken a hard line. They seem to have held that *Leon*'s good-faith exception should not apply at all to permit the admissibility of

---

[8] *Brown v. Illinois*, 422 U.S. 590 (1975).

[9] *Segura v. United States*, 468 U.S. 796 (1984); *Murray v. United States*, 487 U.S. 533 (1988).

[10] *Nix v. Williams*, 467 U.S. 431 (1984).

[11] *See* Janine L. Hockberg, *Note: Dining in Good Faith on Poisonous Fruit?*, 15 WIDENER L. REV. 301, 302 (2009) ("One of the unsettled areas left by [*United States v. Leon*, 468 U.S. 897 (1984),] involved how the good-faith exception was meant to interact with the poisonous fruit doctrine where police received a warrant based upon evidence found in an inadvertently illegal search or seizure.").

evidence obtained pursuant to a search warrant if the information proffered to the magistrate to supply probable cause was itself obtained, and hence tainted, by some prior illegality.[12] On the other hand, the Second Circuit has ventured to the opposite extreme as the Ninth, Tenth, and Eleventh Circuits, seeming to hold that a prior illegality will always be excused so long as a neutral magistrate ultimately determines there is probable cause.[13] These cases were

---

[12] *United States v. Vasey*, 834 F.2d 782, 789 (9th Cir. 1987) ("We therefore conclude that a magistrate's consideration does not protect from exclusion evidence seized during a search under a warrant if that warrant was based on evidence seized in an unconstitutional search. Accordingly, the good faith exception should not and will not be applied to the facts of this case."); *United States v. Scales*, 903 F.2d 765, 767-68 (10th Cir. 1990) (refusing to apply *Leon*'s good-faith exception to justify search of luggage with a warrant when the warrant was predicated on an illegal seizure of that luggage to conduct a dog sniff); *United States v. McGough*, 412 F.3d 1232, 1239-40 (11th Cir. 2005) (concluding that *Leon*'s good-faith exception "is not applicable" when the search warrant was itself tainted with information in the warrant affidavit that was obtained by virtue of a prior illegality). Several states have taken a similar hard-line approach. *See State v. Carter*, 69 Ohio St.3d 57, 68, 630 N.E.2d 355, 364 (1994) ("The good-faith exception does not apply where a search warrant is issued on the basis of evidence obtained as a result of an illegal search."); *People v. Machupa*, 7 Cal.4th 614, 29 Cal.Rptr.2d 775, 872 P.2d 114 (1994) (same); *State v. DeWitt*, 184 Ariz. 464, 469-70, 910 P.2d 9, 14-15 (1996) (rejecting good-faith exception based upon a search warrant where information supplying probable cause for the warrant was itself unconstitutionally obtained); *State v. Reno*, 260 Kan. 117, 129, 918 P.2d 1235, 1243 (1996) (the *Leon* good-faith exception does not apply because "[t]he admissibility of the evidence depends not on the good faith of the seizing officers but, rather, on the source of the information used to obtain the search warrant").

[13] In a case strikingly similar to this one, police took a drug-sniffing dog onto the curtilage of the defendant's apartment. *United States v. Thomas*, 757 F.2d 1359, 1366 (2d Cir. 1985). The Second Circuit held that the dog sniff constituted an unconstitutional search. *Id*. at 1367. It further concluded that, absent the dog's positive alert for drugs, the warrant affidavit was insufficient to supply probable cause. *Id*. at 1368. The court turned next to the applicability of the *Leon* good-faith exception. It held that the magistrate's approval of the warrant was sufficient to render any evidence deriving from the ultimate search of the apartment, though tainted by a warrant that, absent the dog-sniff information, lacked probable cause, nevertheless not subject to the exclusionary rule. *Id*. The court observed: "There is nothing more the officer could or should have done under these circumstances to be sure his search [of the apartment] would be legal. The magistrate, whose duty it is to interpret the law, determined that the canine sniff could form the basis for probable cause; it was reasonable for the officer to rely on this determination." *Id*. *See also United States v. Carmona*, 858 F.2d 66, 68 (2d Cir. 1988) (illegally intrusive "security sweep" uncovered information that went

decided relatively early, however, and it remains to be seen whether these circuits will eventually moderate their views in light of the attitude other circuits have since taken that seem to have carved out various middle grounds.

In a progression of opinions, the Eighth Circuit has held that the good-faith exception may apply to allow admissibility of evidence deriving from a search warrant that was tainted by a prior illegality—but only if the prior illegality was itself the product of a good-faith mistake on the part of the police, such that the deterrent purpose of the Fourth Amendment exclusionary rule would not efficaciously be served.[14] The First Circuit has held similarly,

---

into a warrant affidavit, but the officers who executed the warrant nonetheless acted in good-faith reliance on the magistrate's finding of probable cause, notwithstanding the prior illegality).

[14] In *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989), DEA agents at the Saint Louis airport illegally detained the defendant's luggage in order to have a drug dog sniff his bags. Nevertheless, the question whether the officers had reasonable suspicion to seize the luggage was deemed "close enough to the line of validity" that the magistrate's approval of a warrant predicated on the dog sniff rendered the police conduct in relying on the warrant "objectively reasonable" for *Leon* purposes, notwithstanding the prior illegality. *Id*. To the same effect is the Eighth Circuit's opinion in *United States v. Kiser*, 948 F.2d 418, 422 (8th Cir. 1991). And again, in *United States v. Fletcher*, 91 F.3d 48, 52 (8th Cir. 1996), under similar circumstances, the Eighth Circuit once again applied the good-faith exception. Though the court found a lack of reasonable suspicion to seize the defendant's bag for a dog sniff, it nevertheless concluded:

> Considering all circumstances, we agree with the district court that the officers had an objectively reasonable belief that they possessed a reasonable suspicion as would support the valid detention of Fletcher's bag as well as an objectively reasonable belief that the warrant issued was valid. * * * The purpose of the exclusionary rule, deterrence of police misconduct, will not be served by its application to this case.

*Id*.

also noting that the circumstances of the prior illegality were set forth in the warrant affidavit so that the magistrate could judge the legality of the prior warrantless search.[15]

More recently, the Sixth and Fifth Circuits have weighed in. The Sixth Circuit for the first time explicitly framed the issue as one of how to "reconcile the 'good faith' exception established in *Leon* . . . with the 'fruit of the poisonous tree' doctrine[.]" *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005). In *McClain*, police conducted an illegal protective sweep of a residence, unduly believing that a possible burglary was in progress. A different officer subsequently sought a search warrant for the house, suspecting a marijuana growing enterprise based on information obtained during the illegal sweep. *Id*. at 560. The Sixth Circuit affirmed the district court's judgment that the initial entry and search were illegal. *Id*. at 564. It turned next to the question of whether that taint should render the second officer's reliance on the magistrate's issuance of the warrant to be beyond the scope of the good-faith exception. *Id*. It concluded that "this is one of the unique cases in which the *Leon* good-faith exception should apply despite an earlier Fourth Amendment violation." *Id*. at 565. Like the Eighth Circuit in *White*, the Sixth Circuit found that "the facts surrounding the initial Fourth Amendment violation were 'close enough to the line of validity to make the

---

[15] The prior illegality in *United States v. Diehl*, 276 F.3d 32, 41 (1st Cir. 2002), was an illegal entry onto the curtilage of a rural property in order to observe circumstances suggesting that marijuana was being cultivated. In declaring the prior illegality insufficient to defeat application of the good-faith exception to the exclusionary rule, the court observed that snow on the ground had contributed to the officer's failure to note the hallmarks of curtilage, and that the circumstances under which he had entered the property were "faithfully set forth" in the warrant affidavit. *Id*. at 43. The court held that "the remedy of exclusion in this instance is inappropriate." *Id*.

officer's belief in the validity of the warrant objectively reasonable." *Id*. at 566 (quoting *White*, 890 F.2d at 1419). Three other facts also contributed to the court's conclusion. First, there was no indication that the officers were consciously violating the Fourth Amendment when they conducted the illegal sweep of the house, since there had been at least some basis in fact to suggest a burglary might be afoot. *Id*. Second and third, and "[m]ore importantly, the officers who sought and executed the search warrants were not the same officers who performed the initial warrantless search, and [the] warrant affidavit fully disclosed to a neutral and detached magistrate the circumstances surrounding initial warrantless search." *Id*. All of these circumstances combined to convince the Sixth Circuit that "the *Leon* exception bars application of the exclusionary rule in this case." *Id*.

After canvassing the preceding case law, and drawing heavily on *McCain*, the Fifth Circuit recently distilled the interplay between the *Leon* good-faith doctrine and the fruit-of-the-poisonous-tree doctrine in this way:

> We adopt the following reasoning . . . as our understanding of the interaction of the doctrine of fruit of the poisonous tree with *Leon*'s good faith exception, as each appl[ies] to evidence obtained as the result of the execution of a search warrant. Two separate requirements must be met for evidence to be admissible: (1) the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant must be 'close enough to the line of validity' that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warranted was not tainted by unconstitutional conduct, and (2) the resulting search warrant must have been sought and executed by a law enforcement officer in good faith as prescribed by *Leon*.

*United States v. Massi*, 761 F.3d 512, 528 (5th Cir. 2014).[16] The court ultimately concluded:

> The good faith exception to the exclusionary rule applies here where the search warrant, though ultimately obtained as a result of an illegal detention in violation of the Fourth Amendment, was obtained and executed by a law enforcement officer in good faith and under an objectively reasonable belief that it was valid *and relied upon appropriately obtained evidence.*

*Id*. at 532 (emphasis added).

Two years later, after the court of appeals issued its opinion in this case, the Fifth Circuit reiterated the holding in *Massi*, applying it to facts strikingly similar to those in this case to uphold the admissibility of evidence under the good-faith exception. In *United States v. Holley*, 831 F.3d 322, 326-27 (5th Cir. 2016), police used a drug-sniffing dog to detect the odor of illegal drugs at the garage door of two residences, and when the dog alerted, they obtained warrants to search those residences based upon the alert. *Id*. at 324. The defendant argued that the warrants were tainted under *Jardines*, and that the *Leon* good-faith exception therefore could not apply. *Id*. at 326. The Fifth Circuit found this argument to be foreclosed by *Massi*, and held that the question of whether a drug-dog sniff at the garage door was an

---

[16] The Fifth Circuit rejected *McCain*'s suggestion that the officer executing the warrant necessarily ought to be different than the officer who committed the prior illegality. *Massi*, 761 F.3d at 528. The Fifth Circuit observed, and we agree, that

> [w]hat is important is that the officer presenting the information to a magistrate be objectively reasonable in concluding that the information being used to support the warrant was not tainted. It is not awareness of the existence of the conduct that later is found to be improper that is important, but awareness at the time of presenting the affidavit that the conduct violated constitutional rights that would affect the application of the good faith exception.

*Id*.

unconstitutional invasion of the curtilage was "close enough to the line of validity" to support the conclusion that the police had acted in objective good faith in relying on the canine alerts to supply probable cause for the warrants. *Id*. at 326-27. We regard the Fifth Circuit's pronouncement in *Massi* to be an acceptable synthesis of the federal case law with respect to the appropriate interplay between the fruit-of-the-poisonous-tree doctrine and the good-faith exception to the federal exclusionary rule. The question for us in this case, then, is whether the language of Article 38.23(b) will accommodate it. We hold that it does.

### Article 38.23(b)

Article 38.23(a)'s exclusionary rule does not apply when the challenged "evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX. CODE CRIM. PROC. art. 38.23(b). An officer who has included information in a search warrant affidavit that he knows—or should know—to be illegally obtained cannot be said, we think, to have acted in good-faith reliance upon any warrant that may issue that depends for its probable cause upon that tainted information. Thus, the language of the statutory exception is broad enough to embrace the fruit-of-the-poisonous-tree doctrine. It is also broad enough, we conclude, to accommodate a corollary: An officer who reasonably believes that the information he submitted in a probable cause affidavit was legally obtained has no reason to believe the resulting warrant was tainted. In executing the warrant, that officer "act[s] in objective good faith reliance upon" the warrant, as long as the warrant is facially valid. Thus understood, the

language of Article 38.23(b) is "consistent with" application of good-faith principles to excuse a prior illegality, and thus render an officer's reliance on a neutral magistrate's assessment of probable cause objectively reasonable. *Baker*, 956 S.W.2d at 23.

Accordingly, we hold that the good-faith exception of Article 38.23(b) will apply when "the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant [was] 'close enough to the line of validity' that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct[.]" *Massi*, 761 F.3d at 528. We turn now to the question of whether the officers in this case operated sufficiently close to the line of validity in conducting the drug sniff that they "act[ed] in objective good faith reliance" on the magistrate's probable cause determination in issuing the warrant.

### The Canine Drug Sniff

Consistent with *Jardines*, the dog sniff that was conducted without a warrant in this case unquestionably violated the Fourth Amendment. To the extent that *Jardines* adopted a new constitutional rule, that new rule would apply retroactively to any case pending on direct appeal at the time of its decision, as this case was. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Since *Jardines*, this Court has held that it constitutes a Fourth Amendment violation to conduct a warrantless drug sniff at the front door of an apartment in a multi-dwelling complex because it constitutes an invasion of the curtilage of the home. *State v. Rendon*, 477 S.W.3d 805, 811 (Tex. Crim. App. 2015). Because we ordinarily follow federal rules of

retroactivity, *e.g.*, *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013), we should likewise apply the holding in *Rendon* to this case, consistently with *Griffith*.

In short, there can be little question at this juncture that the drug sniff in this case, occurring at the door of Appellant's single-dwelling upstairs apartment, was perpetrated through an unconstitutional invasion of the curtilage of his home.[17] To the extent that the drug dog's positive alert for drugs was incorporated into the search warrant in this case, the warrant affidavit was unquestionably tainted with a prior illegality. Moreover, we have already held that, absent the information gained from the illegal drug-dog sniff, the warrant affidavit failed to establish probable cause. *McClintock*, 444 S.W.3d at 19-20.

With that information included, however, the warrant affidavit amply supports a determination by a neutral magistrate that there was probable cause to search the apartment for contraband. So the question under Article 38.23(b), as we have construed it, becomes: Did the officers have an objective good-faith basis to believe that their use of a drug dog would not adversely affect the validity of the warrant? The answer depends upon how "close to the line of validity" their use of the trained drug dog was. In the instant case, we think it was close enough to declare that the officers acted in good-faith reliance on the warrant.

It is true that there was no binding precedent prior to *Jardines* that held that a canine drug sniff conducted on the curtilage of a home was constitutional. Thus, *Jardines* did not

---

[17] In this respect, the trial court erred to conclude that the canine drug sniff did not constitute a search for Fourth Amendment purposes.

overrule anything, as was the situation in *Davis*.[18] Nevertheless, even after *Jardines* was decided, binding precedent continues to hold that—at least in the abstract—the use of a trained canine to detect the presence or absence of illicit narcotics does not constitute a "search" for Fourth Amendment purposes. *Illinois v. Caballes*, 543 U.S. 405 (2005). This is because drug dogs detect only illegal substances, and citizens lack any reasonable expectation of privacy in possessing illegal substances. *Id*. at 409. Only when the drug-sniff is conducted in the course of a warrantless invasion of the curtilage of a home does it constitute an unconstitutional search for Fourth Amendment purposes. But the Supreme Court did not make this distinction crystal clear until *Jardines* itself. And the distinction remains a subtle one. Indeed, even after *Jardines* was decided, the question of what exactly constitutes curtilage in an apartment setting, as opposed to a stand-alone house, remained a close and contentious issue for this Court in deciding *Rendon*.[19]

At the time the officers in this case used the trained canine to sniff for drugs at the door of Appellant's apartment, the constitutionality of that conduct remained "close enough to the line of validity" for us to conclude that an objectively reasonable officer preparing a

---

[18] In *Davis*, officers had conducted a search of an automobile pursuant to the arrest of the driver, even though he had been removed from the car and secured in the back of a squad car—as they were unequivocally authorized at the time to do under *New York v. Belton*, 453 U.S. 454 (1981). While *Davis* was pending on appeal, the Supreme Court overruled itself, in *Arizona v. Gant*, 556 U.S. 332 (2009). *Jardines* did not likewise overrule any prior Supreme Court precedent that had expressly permitted canine drug sniffs from the standpoint of the curtilage of a home.

[19] *See Rendon*, 477 S.W.3d at 813-23 (Yeary, J., dissenting, joined by Keller, P.J., and Keasler and Hervey, JJ.) (arguing that what constitutes curtilage of a house, as in *Jardines*, versus an apartment or other multi-dwelling residence, is a different issue).

warrant affidavit would have believed that the information supporting the warrant application was not tainted by unconstitutional conduct. Because the language of Article 38.23(b) accommodates the *Massi* good-faith standard, we hold that the officer's subsequent search of the apartment was executed "in objective good faith reliance" on the warrant. The fruit of that search is therefore excepted from Article 38.23(a)'s exclusionary rule. Ultimately, the trial court did not err to overrule Appellant's motion to suppress.[20]

## CONCLUSION

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

FILED:      March 22, 2017
PUBLISH

---

[20] An appellate court should uphold the trial court's denial of a motion to suppress so long as its ruling is correct on any legal theory applicable to the case. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). Though the trial court erred to hold that the dog sniff in this case did not constitute a search for Fourth Amendment purposes, it could have ruled that the warrant supplied probable cause and that the police acted in objective good faith in relying on the neutral magistrate's finding of probable cause. The use of the drug dog at Appellant's front door, although illegal, was sufficiently "close to the line of validity" as to render that reliance reasonable.