Alcala, J., filed a dissenting opinion in which Walker, J., joined.
In contrast to this Court's refusal to grant the motion for rehearing filed by Bradley Ray McClintock, appellant, I would instead grant his motion and rehear the case. On original submission, this Court held, for the first time, that when a magistrate and search-warrant affiant believe that a warrant is being issued based upon probable cause under the existing law, but they are reasonably wrong about the existing law due to this Court's mistaken statements about the law, then the evidence need not be suppressed. See McClintock v. State , No. PD-1641-15, 541 S.W.3d 63, 72-73, 2017 WL 1076289, at *7 (Tex. Crim. App. March 22, 2017). I dissented. In my dissenting opinion, I explained that I would have held that the plain language in Article 38.23 of the Texas Code of Criminal Procedure requires the suppression of the evidence because the good-faith exception for warrants is inapplicable under the facts of this case. See id. at 75, 2017 WL 1076289, at *8 (Alcala, J., dissenting); TEX. CODE CRIM. PROC. art 38.23.[1] I explained that the good-faith exception in Article 38.23(b) was inapplicable because the statute's requirement of a warrant "based upon probable cause" plainly requires probable cause under a correct application of the law. See TEX. CODE CRIM. PROC. art. 38.23(b). I noted that this Court's longstanding precedent supported my assessment of the plain language in the statute. See McClintock, 541 S.W.3d at 76, 2017 WL 1076289, at *9.[2] Given this, I indicated that the statutory good-faith exception should not apply to this case because, as this Court held in our *543 earlier opinion in this case, no probable cause supported the search warrant that was issued. See McClintock v. State , 444 S.W.3d 15, 19-20 (Tex. Crim. App. 2014). In the absence of probable cause under a correct application of the law, the general rule in Article 38.23(a) applies and requires that the evidence in this case be suppressed. See TEX. CODE CRIM. PROC. art. 38.23(a). Rather than repeat my earlier dissenting opinion in this case, I issue the instant dissenting opinion on rehearing to address appellant's arguments presented in his motion for rehearing.
In his motion for rehearing, appellant makes three points. First, he asserts that this Court's majority opinion failed to consider the particular facts about appellant's apartment and its landing before summarily concluding that the scope of an apartment's curtilage is "close and contentious." Second, he contends that the standard employed by this Court's majority opinion creates an unduly broad good-faith exception applicable anytime the law regarding a predicate search is not "crystal clear." Third, he argues that this case should be remanded for consideration of whether the good-faith exception is inapplicable due to the intentionally or recklessly made false statements and omissions in the affidavit. Each of these arguments is worthy of this Court's attention and presents a valid basis for withdrawing the earlier majority opinion in this case.
A. The Majority Opinion Did Not Analyze the Facts of Appellant's Case or Consider Relevant Texas Precedent
Appellant suggests that this Court's majority opinion did not analyze the curtilage issue on the facts of this particular case, and he asserts that this analysis would reveal that the curtilage issue is not "close and contentious," as the majority opinion determined. See McClintock , 541 S.W.3d at 74, 2017 WL 1076289, at *8. As appellant notes, unlike the apartment in State v. Rendon , 477 S.W.3d 805 (Tex. Crim. App. 2015), which presented a close and contentious question about the extent of its curtilage, the landing outside of appellant's rear door did not present a close or contentious question about whether it was within his apartment's curtilage. Appellant's landing was not visible to the public or other tenants, was accessible only from a private lot, led to appellant's apartment only, and was used by appellant for domestic activities. Furthermore, unlike in Rendon , where the facts showed that Rendon would expect members of the public to approach, here the entry used by the police was at the back door, and the police's entry onto the landing occurred in the middle of the night. Because of the significant factual differences between Rendon and this case, this Court's majority opinion should not have relied on the dispute about the boundaries of curtilage in Rendon to affect the decision about whether there was any real dispute about curtilage in this case.
Although it impacted the legality of an intrusion into the curtilage in factual scenarios like Rendon 's, the Supreme Court's decision in Jardines was immaterial to these facts that, under Texas law, would have required a search warrant even pre- Jardines . See Florida v. Jardines , 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). As appellant observes, "Well before the challenged police conduct[,] this Court had recognized that, while an officer is authorized by well-established community custom to enter curtilage for the purpose of knocking on the front door, 'once he deviates from this purpose' he 'has no right to be there.' " See Bower v. State , 769 S.W.2d 887, 897 (Tex. Crim. App. 1989), cert. denied , 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). Appellant contends that an "officer who was reasonably informed as to the law should have known, *544 even before Jardines , that warrantless entry onto curtilage would clearly foreclose an entry made in the middle of the night solely for the purpose of conducting a dog-sniff." Appellant concludes that the "good faith issue cannot be fairly resolved without addressing the relevant Texas law on the limited license to enter curtilage."[3]
I agree with appellant that the majority opinion failed to consider whether this Court's analysis in Rendon and Bowers actually supports a conclusion that the private rear-access, second-floor landing to appellant's apartment clearly constituted protected curtilage and that a reasonably well-informed officer would have known that an intrusion into that space for the sole purpose of conducting a dog sniff was unlawful even prior to Jardines . Because this Court's decision did not consider the significance of established precedent in light of the facts of the instant case, I would grant appellant's motion for rehearing on that basis.
B. The Newly Created Good Faith Exception is Unduly Broad
Additionally, appellant argues that this Court's new "close enough" standard now creates a broad good-faith exception that is "applicable anytime the law regarding a predicate search/seizure is not 'crystal clear' " because there is no binding precedent directly on point. He continues that this "standard would embrace nearly every contested predicate search/seizure issue because Fourth Amendment issues are rarely governed by bright-line categorical rules but rather by multi-factor, case-by-case, totality of the circumstances analysis." Furthermore, he observes that, "[n]otably, this standard is the opposite of [the] Supreme Court's application of the good-faith exception in Davis [v. United States ], where the court excused conduct that was clearly lawful, i.e., in strict compliance with binding precedent 'that specifically authorizes a particular police practice.' " See Davis v. United States , 564 U.S. 229, 239-41, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Because this Court's "close enough to the line of validity" standard would uphold police searches unless the conduct had been expressly announced as unlawful by binding authority, appellant contends that this Court should grant rehearing to clarify how precedent existing at the time of the predicate search should be analyzed in the determination of whether the police conduct was "close enough" to being lawful. This analysis, he argues, should "(1) apply the existing law defining curtilage to the facts of this case; (2) address how this Court's precedent limiting the license to approach a residence door should be weighed against any competing precedent that would support a finding of good faith; and (3) define the degree of clarity that would foreclose the exception, i.e., must it be 'crystal clear' that the conduct was unlawful, or only reasonably clear."
I agree with appellant that this Court's majority opinion has left too many unanswered questions and presents an unworkable standard for courts and police to follow. I would grant rehearing to address these matters.
C. Alternatively, This Court Should Remand this Case to the Court of Appeals *545 Appellant argues, in the alternative, that this case should be remanded to the court of appeals for consideration of whether the good-faith exception is inapplicable due to intentionally or recklessly made false statements and omissions in the affidavit. See Franks v. Delaware , 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (if a probable cause affidavit contains a false statement made either knowingly and intentionally or with reckless disregard for the truth, such statement must be excised from the affidavit); United States v. Leon , 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (good-faith exception is inappropriate when police are dishonest or reckless in preparing warrant affidavit). Appellant asserts that the affiant stated that the rear of the duplex was a "public parking area" and that the rear staircase was "open to the public." Appellant argues that both statements are demonstrably false. The owner of the premises informed the trial court that the rear staircase was for tenant use only and that visitors and delivery personnel accessed the apartment through the front door. Furthermore, the vehicles in the rear parking area were registered to the two owners of the first-level business and to appellant, rather than to visitors of the premises. Because appellant made these arguments to the court of appeals and they would be an independent basis on which to hold that the search warrant was invalid, I would remand this case to the court of appeals for it to address these arguments in the first instance.
I would apply the plain language of the Article 38.23 good-faith exception that requires the exclusion of the evidence obtained by a search warrant that was issued in the absence of probable cause. I, therefore, would grant rehearing in this case and issue a new majority opinion affirming the judgment of the court of appeals. Because this Court does not, I respectfully dissent.

Article 38.23 states,
(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
* * *
(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based upon probable cause.
Tex. Code Crim. Proc. art. 38.23.

See Curry v. State , 808 S.W.2d 481, 482 (Tex. Crim. App. 1991) ("The plain wording of Art. 38.23(b) requires an initial determination of probable cause."). Because an initial determination of probable cause is necessary, the good faith exception in Subsection (b) has been satisfied only in cases involving technical defects in warrants, not warrants issued in the absence of valid probable cause under a correct application of the law. See , e.g. , Dunn v. State , 951 S.W.2d 478, 479 (Tex. Crim. App. 1997).

Appellant also cites to a recent decision from the Michigan Supreme Court that discusses good faith in the context of a late night approach to the door of a residence. See People v. Frederick , 895 N.W.2d 541, 546-47 (Mich. 2017). The Michigan Supreme Court held that the police exceeded any implied license when they approached a residence's door in the middle of the night, explaining that there were different expectations of visitors in the middle of the day as compared to late at night. Id. It stated, "[T]here is generally no implied license to knock at someone's door in the middle of the night." Id.