

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. PD-0287-19

---

### THE STATE OF TEXAS

**v.**

### CESAR RAMIRO ARELLANO, Appellee

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS VICTORIA COUNTY

---

SLAUGHTER, J., delivered the opinion of the Court in which KEASLER, HERVEY, RICHARDSON, YEARY, NEWELL, and WALKER, JJ., joined. KELLER, P.J., and KEEL, J., concurred.

## O P I N I O N

Code of Criminal Procedure Article 18.04(5) requires, in part, that a search warrant contain a legible magistrate's signature. So what effect does an illegible magistrate's signature have upon the applicability of the statutory good-faith exception? *See* TEX. CODE CRIM. PROC. art. 38.23(b) (setting forth statutory good-faith exception). The short answer

is none. Therefore, we vacate the judgment of the court of appeals and remand this case to that court for further proceedings.

## I. Background Facts and Procedural Posture

After Appellee Cesar Ramiro Arellano was arrested for driving while intoxicated, the arresting officer, Phillip Garcia, prepared a probable cause affidavit to support a search warrant for a blood draw. Officer Garcia submitted his sworn affidavit to the on-duty magistrate. Using a cursive signature, the magistrate signed the blank signature line of a form search warrant authorizing the search and seizure of Appellee's blood. Below the signature line appeared the words, "Magistrate, Victoria County, Texas." Aside from the cursive signature, the magistrate's name was not typed or handwritten anywhere on the warrant. Upon execution of the search warrant, Appellee was charged with DWI.[1]

In the trial court, Appellee filed a motion to suppress all evidence stemming from the blood draw. At the pretrial suppression hearing, Appellee argued that the search warrant to obtain the blood specimen was facially invalid because the magistrate's signature was illegible in violation of the requirements of Code of Criminal Procedure Article 18.04(5). *See* TEX. CODE CRIM. PROC. art. 18.04(5) (providing that a search warrant "shall be sufficient" if it contains, among other "requisites," "the magistrate's name [ ] in clearly legible handwriting or in typewritten form with the magistrate's signature"). Therefore, he

---

[1] *See* TEX. PENAL CODE § 49.04(a). Because Appellee had a prior DWI conviction, the offense was enhanced to a Class A misdemeanor. *Id*. § 49.09(a).

contended, the evidence was subject to suppression under Code of Criminal Procedure Article 38.23(a).[2] In support of his motion, Appellee offered into evidence the signed search warrant and Officer Garcia's affidavit, both of which were admitted as exhibits. Aside from this, Appellee did not present any evidence or call any witnesses.

The State rested without offering any evidence. Instead, the State relied on the argument that because Officer Garcia acted in good-faith reliance on a warrant issued by a neutral magistrate based on probable cause, the blood evidence should be exempted from suppression under Code of Criminal Procedure Article 38.23(b).[3] The State contended that an illegible magistrate's signature, much like a typographical error or other technical defect, does not invalidate an otherwise valid warrant. It further asserted that Officer Garcia's sworn affidavit that was admitted into evidence was sufficient to show that he acted in good-faith reliance on the warrant. Because there was no evidence presented that Officer Garcia did not act in good faith, that the magistrate was not neutral, or that the magistrate did not issue the warrant based on probable cause, the State concluded that under the statutory good-faith exception, the evidence was not subject to suppression.

---

[2] TEX. CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

[3] TEX. CODE CRIM. PROC. art. 38.23(b) ("It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.")

During the State's arguments, the trial judge expressed concern about the unknown identity of the magistrate. The prosecutor responded that he did not know which magistrate had signed the warrant but could find out.[4] The trial court did not respond to this offer. Instead, it ordered the parties to file briefs addressing any relevant case law or arguments that it should consider before making its ruling. Attached to the State's brief submitted in response to the trial court's request was an affidavit from Officer Garcia attesting to the identity of the magistrate who had signed the warrant and asserting that he acted in good-faith reliance upon the legality and validity of the warrant.[5]

The trial court granted Appellee's motion to suppress. In its written findings of fact and conclusions of law, the trial court determined that the magistrate's signature "was not

---

[4] After telling the trial judge he did not know whose name was on the warrant, the prosecutor offered to call the county clerk's office to "find out which magistrate signed it," but conceded he could not tell from the face of the warrant whose signature it was because the signature was in cursive. The trial judge did not respond to the State's offer to call the clerk's office, and the parties resumed their arguments. Later in the hearing, in response to the trial judge's statement indicating concern that he did not know the identity of the magistrate who signed the warrant, the State re-offered to call the clerk's office. Immediately following this exchange, there was a discussion off the record before the trial judge took a short recess to read case law presented by the parties. Ultimately, the identity of the magistrate who signed the warrant remained unknown during the suppression hearing, and it was not until the parties submitted their post-hearing briefs that the State provided this information to the trial court.

[5] In addition to the affidavit from Officer Garcia, the State also included with its brief a copy of Officer Garcia's incident report. The report identifies the magistrate who signed the warrant and describes the events leading up to the blood draw, stating, "I read the statutory warning to [Appellee] and requested a sample of his blood, to which he refused. I transported Appellee to the VCSO jail, where I obtained a blood search warrant for a blood specimen from [Appellee], which was issued by District Judge Williams." Officer Garcia then transported Appellee to the hospital where his blood was drawn by a lab technician, after which he returned Appellee to the jail.

in legible handwriting, nor was it accompanied by any name identifying the magistrate in either clearly legible handwriting or in typewritten form." Thus, the court concluded that the warrant was facially invalid in light of its failure to comply with Article 18.04(5). Given the warrant's facial invalidity, the court further concluded that the statutory good-faith exception could not apply because "in order to rely on the 'good faith exception' to the exclusionary rule . . . an officer must rely on a facially valid warrant." Alternatively, it reasoned that even assuming the good-faith exception could apply, there was no evidence to show that Officer Garcia objectively relied in good faith on the warrant. With regard to Officer Garcia's affidavit attached to the State's post-hearing brief, the trial court indicated that it had discretion to ignore that evidence, but at the same time stated that it believed the affidavit was inadequate to establish Officer Garcia's good faith.[6]

On direct appeal, the court of appeals upheld the trial court's suppression ruling.

---

[6] Regarding the lack of evidence of good faith, the trial court's findings and conclusions state:

> g. Tex. Code of Crim. Proc. art. 28.01 allows that a trial court *may* conduct a suppression hearing based on motions, affidavits, or testimony, but there is nothing in the statute to indicate that it *must*. It is merely an indication that such hearings are informal and need not be full-blown adversary hearings conducted in accord with the rules of evidence. *Ford v. State*, 305 S.W.3d 530, 540 (Tex. Crim. App. 2009).

> h. Officer Garcia did not testify during the hearing, and thus presented no evidence to show whether he relied in "good faith" upon the warrant in this case.
> . . . .
> j. Even if the Trial Court wished to consider the [post-hearing] affidavit, as within its discretion, the statements in the affidavit provide a recitation of the statutory requirements for the "good faith exception" with respect to a warrant.

*State v. Arellano*, 571 S.W.3d 422 (Tex. App.—Corpus Christi 2019).  The court of appeals agreed that the illegible magistrate's signature rendered the warrant facially invalid under Article 18.04, and therefore, the good-faith exception in Article 38.23(b) could not apply as a matter of law. *Id.* at 426 ("In executing a warrant, that officer 'acts in objective good faith reliance upon' the warrant, 'as long as the warrant is facially valid.' . . . . Because the 'good faith exception' requires a facially valid warrant, and here, by contrast, no valid search warrant existed, the 'good faith exception' is inapplicable to this case.") (quoting *McClintock v. State,* 541 S.W.3d 63, 73 (Tex. Crim. App. 2017)). The court of appeals also rejected the State's argument that the trial court had erred by declining to consider its documentary evidence attached to its post-suppression-hearing brief, including Officer Garcia's affidavit. *Id.* at 427. It reasoned that the evidence was immaterial given the warrant's facial invalidity, and moreover, the trial court had discretion to decline to consider this evidence. *Id.*[7]

We granted the State Prosecuting Attorney's petition for discretionary review on four grounds to determine whether the court of appeals erred by upholding the trial court's

---

[7] In addition to the foregoing issues, the State also contended that the trial court's findings of fact and conclusions of law were inadequate. Specifically, the State contended that the findings were inadequate because they failed to determine whether Officer Garcia's affidavit or the offense report was credible; whether the magistrate was a neutral and detached magistrate; or whether the warrant was issued based on probable cause. The court of appeals resolved this issue by simply stating, in a footnote, that the issue was not dispositive in light of the warrant's facial invalidity. *Arellano*, 571 S.W.3d at 427 n. 4 (citing TEX. R. APP. P. 47.4).

suppression ruling.[8]

## II.    Analysis

The issue we must decide is whether the magistrate's illegible signature on the search warrant rendered the warrant facially invalid and thereby prohibited application of the statutory good-faith exception.  *See* TEX. CODE CRIM. PROC. art. 18.04(5); art. 38.23(b). While we agree with the court of appeals that pursuant to Code of Criminal Procedure Article 18.04(5), a search warrant lacking a legible magistrate's signature is defective, we further conclude that even with such a defect, a warrant is still a warrant for purposes of Article 38.23(b). Thus, the good-faith exception will nevertheless apply when the record establishes that the officer was acting in objective good-faith reliance upon a warrant based upon a neutral magistrate's determination of probable cause. *See id.* art. 38.23(b); *Dunn v. State*, 951 S.W.2d 478 (Tex. Crim. App. 1997). Moreover, this type of defect highlights

---

[8] The grounds on which we granted review are:

> 1. Does Texas Code of Criminal Procedure Article 38.23(b), the "good faith" exception, apply to warrants that do not have the magistrate's name printed or typed under his signature?

> 2. In a motion to suppress evidence obtained with a warrant, does the defendant bear the burden of negating the "good faith" exception?

> 3. Does Texas Code of Criminal Procedure Article 28.01, § 1(6), governing hearings on motions to suppress, allow a trial court to ignore a mode of evidence it made necessary?

> 4.  The court of appeals should abate and remand to the trial court for findings and conclusions requested by the State.

the reason why our Legislature enacted the statutory good-faith exception. *Dunn*, 951 S.W.2d at 479. Accordingly, we hold that the good-faith exception is not automatically precluded where, as here, the defect is an illegible magistrate's signature.

## A.      Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Weems v. State,* 493 S.W.3d 574, 577 (Tex. Crim. App. 2016). We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). We review *de novo* a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *Id.* The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019).

## B.      The search warrant's defect did not preclude application of the statutory good-faith exception.

Appellee challenged the blood evidence obtained by the search warrant under our statutory exclusionary rule. That rule provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. art. 38.23(a).  The law violation requiring suppression, Appellee

argued, was that the warrant used to obtain his blood sample was facially invalid because it failed to comply with Article 18.04(5) by having an illegible magistrate's signature.[9]

The State, however, argued that Article 38.23's good-faith exception applied such that the motion to suppress should be denied. That provision states that "[i]t is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX. CODE CRIM. PROC. art. 38.23(b).

The proper scope of both the exclusionary provision in Article 38.23(a) and the exception to it in Subsection (b) is a question of statutory construction. *McClintock v. State*, 541 S.W.3d 63, 66-67 (Tex. Crim. App. 2017). But rather than examining the statutory language to determine whether the exception was met under these circumstances, the court of appeals instead relied on a single statement taken out of context from our opinion in

---

[9]  Article 18.04 provides in full:

> A search warrant issued under this chapter, Chapter 18A, or Chapter 18B shall be sufficient if it contains the following requisites:
>
> (1) that it run in the name of "The State of Texas";
> (2) that it identify, as near as may be, that which is to be seized and name or describe, as near as may be, the person, place, or thing to be searched;
> (3) that it command any peace officer of the proper county to search forthwith the person, place, or thing named;
> (4) that it be dated and signed by the magistrate; and
> (5) that the magistrate's name appear in clearly legible handwriting or in typewritten form with the magistrate's signature.

TEX. CODE CRIM. PROC. art. 18.04.

*McClintock*. *Id.* The court of appeals cited *McClintock* for the proposition that, "[i]n executing a warrant, [the] officer 'act[s] in objective good faith reliance upon' the warrant, '*as long as the warrant is facially valid.*'" *Arellano,* 571 S.W.3d at 426 (quoting *McClintock*, 541 S.W.3d at 73) (emphasis added). The court of appeals apparently interpreted this statement from *McClintock* to mean that, as a categorical proposition, an officer cannot act in objective good-faith reliance upon a warrant bearing an Article 18.04 defect because that warrant is "facially invalid." This was an incorrect interpretation for two reasons: (1) *McClintock* is not an analogous case, and (2) the statement was made in a much different context and does not apply in the way the court of appeals contends it does.

First, unlike the instant case, the issue in *McClintock* did not concern a search warrant's defective form, but rather involved a lack of probable cause to support a search warrant. The question there was whether the statutory good-faith exception could apply where officers had relied on a search warrant that appeared to be supported by probable cause at the time that they conducted their search, but subsequent developments in Fourth Amendment law undermined the legality of the investigative methods used to establish that probable cause. *See McClintock,* 541 S.W.3d at 64-66 (*McClintock II*); *see also McClintock v. State,* 444 S.W.3d 15, 16 (Tex. Crim. App. 2014) (*McClintock I*) (holding that search warrant was unsupported by probable cause where officers' use of dog-sniff evidence to establish probable cause was later held to be unconstitutional search in *Florida v. Jardines*,

569 U.S. 1 (2013)).[10] The ultimate holding in *McClintock II* was "that the good-faith exception of Article 38.23(b) will apply when the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant was close enough to the line of validity that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct." *McClintock II,* 541 S.W.3d at 73 (internal quotations and brackets omitted). Thus, the holding involved an examination of the probable-cause evidence articulated in the affidavit executed to obtain the warrant and whether, under the circumstances, the tainted information could affect application of the statutory good-faith exception. It had nothing to do with the information contained on the face of the warrant. Accordingly, the actual holding of *McClintock II* has no bearing on situations involving the facial validity of a search warrant. To the extent that *McClintock II* is relevant here, it

---

[10] In *McClintock*, prior to obtaining any search warrant, the officers had used a drug-sniffing dog to detect the presence of illegal narcotics outside the door of the defendant's residence. *McClintock v. State*, 444 S.W.3d 15, 16 (Tex. Crim. App. 2014) (*McClintock I*). The dog-sniff evidence was then used to establish probable cause for purposes of obtaining a warrant to search the defendant's residence. *Id.* While the case was pending on appeal, the Supreme Court decided *Florida v. Jardines,* in which it held that the use of a canine drug sniff within the curtilage of a residence is an unconstitutional warrantless search. 569 U.S. 1, 11-12 (2013). After the court of appeals subsequently held the search of McClintock's residence was illegal under *Jardines*, this Court reviewed that determination in *McClintock I*, 444 S.W.3d at 19-20. We agreed with the court of appeals that, after removing the tainted dog-sniff information from the probable cause affidavit, the warrant was unsupported by probable cause. *Id.* We then remanded the case to the court of appeals for it to consider in the first instance whether the search could nevertheless be upheld under the statutory good-faith exception in Article 38.23(b). *Id.* at 20-21. We later granted discretionary review a second time to evaluate the court of appeals' analysis of the good-faith issue in *McClintock II*, discussed above. *See* 541 S.W.3d at 66.

is for the proposition that the application of Article 38.23(b)'s good-faith exception requires a careful examination of the statutory elements and must be determined on a case-by-case basis. *See id.* at 66-67, 72-73.

Second, the *McClintock* quote relied upon by the court of appeals was taken out of context. It was not the holding of that case, nor did it have any significant bearing on the holding. In explaining the basis for our conclusion in *McClintock II* that the Article 38.23(b) exception could apply under those circumstances, we explained that, consistent with the statutory language, "[a]n officer who reasonably believes that the information he submitted in a probable cause affidavit was legally obtained has no reason to believe the resulting warrant was tainted. In executing the warrant, that officer 'act[s] in objective good faith reliance upon' the warrant, *as long as the warrant is facially valid*." *Id.* at 72-73 (quoting TEX. CODE CRIM. PROC. art. 38.23(b)) (emphasis added). Viewed in context, our statement regarding the necessity of a "facially valid" warrant referred to the additional requirements under Article 38.23(b) that a search warrant must on its face be issued by a neutral magistrate and be supported by probable cause (regardless of whether that probable cause was later undermined by some change in the law that tainted the underlying evidence). This statement was not intended to suggest that the good-faith exception applies only to warrants that are facially defect-free. By relying on an isolated statement from our caselaw without considering how the statutory language would apply to these circumstances, the court of appeals went astray in its analysis.

Rather than relying on *McClintock's* statement taken out of context, the case that should have guided the court of appeals' analysis is *Dunn v. State*, 951 S.W.2d 478 (Tex. Crim. App. 1997). In *Dunn*, we considered a question similar to the one here: whether the statutory good-faith exception applied to an arrest warrant that had no magistrate's signature whatsoever. *Id.* at 479. Although *Dunn* involved an arrest warrant and the instant case involves a search warrant, we nevertheless find the reasoning of *Dunn* to be applicable here. In *Dunn*, we observed that the relevant statute, Code of Criminal Procedure Article 15.02, "require[d] the signature of a magistrate in order for a[n arrest] warrant to be sufficient." *Id.*[11] Dunn's arrest warrant was defective under Article 15.02 because the magistrate inadvertently failed to sign it. *Id.* Despite this more glaring defect, we held that the good-faith exception in Article 38.23(b) was not precluded. *Id.* In reaching this decision, we rejected Dunn's argument that the warrant had not "issued" for purposes of Article 38.23(b) in the absence of the magistrate's signature. We explained:

> This appears to be exactly the type of situation intended to be covered by article 38.23(b). Evidence obtained by a police officer acting in good faith reliance upon a warrant based upon a magistrate's determination of probable

---

[11] The statute at issue in *Dunn*, Code of Criminal Procedure Article 15.02, is analogous to Article 18.04, in that it sets forth the requisites for a "sufficient" arrest warrant. *See* TEX. CODE CRIM. PROC. art. 15.02 ("Requisites of Warrant," providing that a warrant shall be sufficient, without regard to form, if it has these "substantial requisites:" "[i]t issues in the name of 'The State of Texas;'" it specifies "the name of the person whose arrest is ordered, if it be known, if unknown, then some reasonably definite description must be given of him;" it states "that the person is accused of some offense against the laws of the State, naming the offense;" and it is "signed by the magistrate, and his office be named in the body of the warrant, or in connection with his signature.").

cause should not be rendered inadmissible due to a defect found in the warrant subsequent to its execution. We hold that appellant's arrest warrant had *issued* for purposes of the good faith exception of article 38.23(b).

*Id.* We went on to hold that the facts in the record met the requirements for application of the good-faith exception, and we upheld the trial court's ruling denying Dunn's suppression motion.[12]

In this case, as in *Dunn*, the sole basis for Appellee's motion to suppress was a statutory defect discovered after execution of the warrant—the illegible signature on the search warrant in violation of Article 18.04(5). Contrary to Appellee's suggestion that this defect rendered the warrant facially invalid such that it was not a "warrant" upon which an officer could reasonably rely in good faith, *Dunn* instructs that a warrant containing this type of defect is still a "warrant" for purposes of Article 38.23(b). As we explained in *Dunn*, evidence obtained pursuant to such a defective warrant should not be rendered inadmissible, so long as the statutory requirements of Article 38.23(b) are satisfied—that is, that the officer was acting in objective good-faith reliance upon a warrant based upon a neutral magistrate's determination of probable cause. We find that this case falls within the

---

[12] Specifically, we noted that the record in *Dunn* showed the magistrate had been presented with several related affidavits and warrants totaling twenty pages. *Dunn*, 951 S.W.2d at 479. The magistrate found probable cause to support all of the warrants, including Dunn's arrest warrant, but he inadvertently failed to sign the twentieth page, which was Dunn's arrest warrant. *Id.* Although he failed to sign the arrest warrant, the magistrate did fill in the date and bond amount. *Id.* We concluded that these facts were sufficient to show that Dunn "was arrested by officers acting in objective good faith reliance upon a warrant based on probable cause and issued by a neutral magistrate." *Id.*

reasoning of *Dunn* and, therefore, hold that a warrant containing an illegible magistrate's signature in violation of Article 18.04(5) does not automatically preclude application of the statutory good-faith exception in Article 38.23(b). We sustain the State's first ground for review.

### C. The case is remanded for the consideration of remaining issues.

Having determined that the good-faith exception is not automatically precluded here, we move to the State Prosecuting Attorney's two additional issues presented on discretionary review: (1) whether the blood evidence should be suppressed after applying the statutory good-faith exception to the facts of this case; and (2) whether the trial court abused its discretion by refusing to consider the documentary evidence submitted by the State with its post-suppression-hearing brief and by failing to make adequate findings of fact and conclusions of law. These issues, however, have not been adequately considered by the court of appeals. The sole basis for the court of appeals' holding in this case was its determination that the magistrate's signature was illegible in violation of Article 18.04(5), which rendered, as a matter of law, the warrant facially invalid such that no law enforcement officer could reasonably claim good-faith reliance upon it. *Arellano*, 571 S.W.3d at 426-27. By relying upon a bright-line rule that the good-faith exception could not apply, the court of appeals has not yet issued an opinion analyzing the facts of this case while applying the statutory good-faith exception. Further, with respect to the SPA's contentions regarding the trial court's handling of the documentary evidence and the

adequacy of its findings of fact and conclusions of law, the court of appeals' position on those issues was intertwined with its determination that the warrant was facially invalid. Moreover, it is not clear that those issues are ripe for our consideration in the absence of any decision by the court of appeals applying the proper legal principles to the facts of this case.

This Court's role is to review decisions of the courts of appeals. *See* TEX. R. APP. P. 66.3; *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014). Were we to reach the remaining issues in this case, we would be doing so in the absence of any real analysis from the court of appeals as to those issues. Although we have sometimes addressed matters in the first instance on discretionary review where their resolution is straightforward, some of the issues presented here raise novel arguments which would be more appropriately addressed first by the court of appeals.[13] Therefore, we decline to address the SPA's remaining grounds for review in the absence of a carefully-wrought decision from the court of appeals addressing the application of the Article 38.23(b) requirements to the facts of this case.

### III. Conclusion

---

[13] For example, the SPA's second ground for review argues, among other things, that the defense, as the movant, should bear the burden of rebutting the applicability of the statutory good-faith exception. *See* SPA's brief on discretionary review, at 11-19 (comparing frameworks for establishing suppression claims under Fourth Amendment and Article 38.23, and urging that, although the prosecution bears the burden of establishing good-faith exception under federal Fourth Amendment law, the defense should shoulder the burden of rebutting applicability of the statutory good-faith exception in Article 38.23(b) because of the significant differences between the two frameworks). This appears to be a matter of first impression.

The court of appeals erred in holding that reliance on the statutory good-faith exception was automatically precluded based on an illegible magistrate's signature in violation of Code of Criminal Procedure Article 18.04(5). Because the remaining issues in the case have not been properly addressed by the court of appeals, we vacate the court of appeals' judgment and remand this case to that court for it to address those issues in a manner not inconsistent with this opinion.

DELIVERED: May 6, 2020
PUBLISH