# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00124-CR

---

**The State of Texas, Appellant**

**v.**

**Adrian Chavez, Appellee**

---

### FROM THE 433RD DISTRICT COURT OF COMAL COUNTY
### NO. CR2024-146D, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## O P I N I O N

Appellant Adrian Chavez was charged with driving while intoxicated (DWI)—third offense or more. *See* Tex. Penal Code §§ 49.04(a), .09(b)(2). Chavez filed a pretrial motion to suppress blood-draw evidence obtained through a search warrant, and the trial court granted the motion after a hearing. The State appeals the trial court's order granting the motion to suppress. We affirm the order.

## BACKGROUND

New Braunfels Police Department (NBPD) Officer Heidi Lima arrested Chavez for DWI following a traffic stop. Chavez refused to consent to a breath or blood test. Officer Lima applied to a magistrate judge for a search warrant for Chavez's blood and submitted a probable-cause affidavit in support of the application. The magistrate judge issued the search warrant, and Chavez's blood was drawn at a hospital. Chavez moved to suppress all evidence

obtained as a result of the warrant, arguing that Officer Lima's affidavit had not been sworn or made under oath. At the suppression hearing, the State presented testimony from Officer Lima and NBPD Officer Katherine Roy, who signed the jurat included in the affidavit.

The affidavit and search warrant were admitted into evidence during the hearing. The body of the affidavit was bookended by a boilerplate introduction and jurat. The affidavit's first sentence stated, "Before me, the undersigned authority, on this day personally appeared HEIDI LIMA who after being duly sworn upon oath deposes and says:"; it closed:

WHEREFORE PREMISES CONSIDERED your affiant requests that a warrant to search for and seize blood from the person of the said Suspect be issued in accordance with the law in such cases provided

HLIMA #284
Signature of Officer

SUBSRIBED AND SWORN to before me by _HLIMA #284_ on this 27th day of _August_ 20_23_

_Katherine Roy #232_
(Notary Public s Signature)

The warrant similarly opened, "WHEREAS an affidavit in writing, under oath, has been made before me by HEIDI LIMA."

Officer Lima, who had been a licensed peace officer for around five years, testified that after arresting Chavez, she drove to the hospital and began preparing the affidavit. Standard departmental policy involved sending an electronic copy of the search warrant application, including the affidavit, to the on-duty magistrate judge. Officer Lima testified that she completed the "entire search warrant application" inside her patrol car. She electronically signed the affidavit, which she testified represented, "That I swore and affirmed that everything that's [i]n the affidavit is true."

2

The affidavit was notarized by Officer Roy, with whom Officer Lima spoke by telephone during the affidavit's preparation.[1] Officer Lima explained that she had been uncertain where to sign the affidavit:

> So the swear—the sworn part, I was a little confused and so I asked her—I was like, I think you're supposed to sign here, but I was supposed to sign there. The signature of the officer was never an issue. I knew that's where I had to sign. That's—it was just the bottom part that I was—

Officer Lima testified that she understood Officer Roy's signature in the jurat to signify that Officer Roy was "swearing and affirming that everything that I include in that affidavit is true."

After adding the complainant's information to the affidavit at the magistrate judge's request, Officer Lima again had Officer Roy sign the jurat and resubmitted the application to the judge, who issued the search warrant. Officer Lima testified "at no time" did "anyone ever put [her] under oath" or "ask [her] if everything in any of those affidavits was true and correct."[2]

Officer Roy, who had been licensed as a peace officer for around four years and had responded to DWI investigations on "[m]any occasions," testified that by serving as notary, she was "stating that the other officer—what they're writing, they're stating that it's true and I'm signing that they're stating that it's true." Officer Lima's signature likewise meant that she was "stating that it is true," and when Officer Lima sent the signed affidavit to Officer Roy, she was given the impression that what Officer Lima had written "was true and correct." However, Officer Roy testified that she did not place Officer Lima under oath. When questioned as to

---

[1] A peace officer is qualified to administer an oath in Texas so long as "the oath is administered when the officer is engaged in the performance of the officer's duties[,] and [] the administration of the oath relates to the officer's duties." Tex. Gov't Code § 602.002(18).

[2] Despite the use of the plural, Officer Lima submitted a single affidavit twice.

3

whether she asked Officer Lima if the affidavit's contents were true and correct, Officer Roy responded, "I asked her to sign in the correct position stating that she was the one swearing to it."

The trial court admitted into evidence an audiovisual recording from Officer Lima's body-camera, which captured her discussion with Officer Roy during the affidavit's preparation. The discussion included the following exchange concerning where Officer Lima was to sign:

> Officer Lima: Hey, you didn't fill out the—you didn't sign where it says "subscribed and sworn to before me by"—and then you're supposed to fill that out.
>
> Officer Roy: That's you.
>
> Officer Lima: Is it?
>
> Officer Roy: Mm-hmm. You sign and date that part.
>
> Officer Lima: Are you sure?
>
> Officer Roy: Mm-hmm. I'll even look at my one from earlier tonight.
>
> Officer Lima: Okay. Yeah, because I never sign that part. I usually—somebody else signs it. So I'm supposed to put my—I'm pretty sure it's you.
>
> Officer Roy: Judge just last week was like, "No, you have to sign there." Because I made Brett sign there.
>
> Officer Lima: Yeah.
>
> Officer Roy: So, I'm inside, so I'll just look at my one that I did.
>
> Officer Lima: Okay.
>
> Officer Roy: Yup. It's me.
>
> Officer Lima: You're supposed to sign it, right?
>
> Officer Roy: Because you're swearing to it. And then the notary public's signature's right underneath it.
>
> Officer Lima: Okay, so I have to sign the "sworn to me"—

4

Officer Roy: "Signature of officer" and then "subscribed and sworn to before me by"—blah, blah, blah—on this date, and then I notarize it.

Officer Lima: Okay, so I sign it?

Officer Roy: Mm-hmm.

Officer Lima: Okay. Thank you.

The two officers briefly spoke once more after Officer Lima made the change requested by the magistrate judge:

Officer Lima: Do you mind signing it for me again? I had to add the complainant's information in there. He's not going to sign it unless I do.

Officer Roy: Okay. Just send it to me.

At the hearing's conclusion, the trial judge noted that there was "affirmative evidence" that Officer Lima had not been placed under oath. He continued:

I'm not faulting the officers. I think maybe we can do a little bit better in the future if that's—like I said, I know they're . . . busy. They're trying to get down the road and get things done, but—and when the issue comes up, I appreciate the honest testimony. You know, it is what it is.

After allowing the State time to file a written response to the motion to suppress, the trial court granted the motion in its entirety and ordered the exclusion of "[a]ll evidence or testimony related to the application for the search warrant, and all evidence related to the administering, testing or recording of the blood draw." This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Hardin*, 664 S.W.3d 867, 871 (Tex. Crim. App. 2022). "An abuse of discretion does not

5

occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles,'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)), or unless the trial court's decision "falls outside the zone of reasonable disagreement," *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We use a bifurcated standard of review, affording almost total deference to a trial court's express or implied determination of historical facts—especially when those determinations are based on assessments of credibility and demeanor—when supported by the record. *Hardin*, 664 S.W.3d at 871; *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We also give almost total deference to a trial court's ruling on mixed questions of law and fact if the resolution to those questions turns on the evaluation of credibility and demeanor. *Hardin*, 664 S.W.3d at 871–72. On the other hand, we review de novo a trial court's legal conclusions and its ruling on mixed questions that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

"We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Dixon*, 206 S.W.3d at 590. When, as here, the trial court does not make findings of fact and conclusions of law, we view the evidence in the light most favorable to the trial court's ruling and assume that it made implicit findings of fact that support its ruling as long as those facts are supported by the record. *Ramirez-Tamayo*, 537 S.W.3d at 35–36.[3] This deferential standard extends to a trial court's determination of historical facts when that determination is based on a videotape recording

---

[3] We disagree with the State that the trial judge's reference to "honest testimony" was an oral finding that the officers' testimony was credible in its entirety.

admitted into evidence at a suppression hearing. *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). Although we may review de novo "indisputable visual evidence" in a video that does not turn on an evaluation of credibility and demeanor, *see Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000), we "must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation," *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

## DISCUSSION

In two issues, the State contends that the trial court abused its discretion by granting Chavez's motion to suppress because (1) the affidavit supporting the search warrant was sworn and made under oath or affirmation, or, alternatively, (2) Officer Lima acted in objective good-faith reliance on the warrant, and evidence obtained through it should therefore have been admitted under the good-faith exception to the exclusionary rule. *See* Tex. Code Crim. Proc. art. 38.23(a) (requiring exclusion in criminal cases of "evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America"), (b) (creating exception to exclusionary rule when "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause").[4]

---

[4] In its brief, the State asserts that "[t]he Texas Constitution does not grant any 'greater' rights to a criminal defendant than the U.S. Constitution in the circumstances of the instant case." The State's issues are based in state law; because the State does not challenge the trial court's ruling on Fourth Amendment grounds, we will not address whether the ruling was correct on that basis. *See* Tex. R. App. P. 47.1.

**I.      Whether Officer Lima's affidavit was "sworn" for purposes of article 18.01(b)**

The State argues that the boilerplate language in the affidavit and search warrant, together with the officers' testimony and the exchange recorded in Officer Lima's body-cam video, demonstrates that Officer Lima subjected herself to perjury and was therefore under oath. Citing factors considered in the Court of Criminal Appeals' decision in *Vaughn v. State*, the State asserts that the affidavit was sworn because: (1) Officer Lima prepared the affidavit, which contained "oath-affirming language"; (2) she asserted to both the magistrate judge and Officer Roy that the affidavit's contents were true; (3) Officer Lima signed the affidavit before Officer Roy; and (4) Officer Lima understood that she was under oath. *See* 177 S.W.2d 59, 60 (Tex. Crim. App. 1943). The State also argues that we should be guided by this Court's decision in *State v. Nix*, No. 03-21-00123-CR, 2023 WL 2668008 (Tex. App.—Austin Mar. 29, 2023, pet. ref'd) (mem. op., not designated for publication). Chavez responds that the officers' signing of the affidavit was not accompanied by the solemnity and gravity necessary to the swearing of an oath or affirmation and that the boilerplate language alone was insufficient to show that the affidavit was sworn.

The Texas Constitution guarantees that no warrant "shall issue . . . without probable cause, supported by oath or affirmation." Tex. Const. art. I, § 9.[5] Article 18.01(b) of the Code of Criminal Procedure similarly requires that "[a] sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search

---

[5] Article I, section 9 and the Fourth Amendment are almost identically worded, but the Court of Criminal Appeals "interprets the Texas Constitution by '[the Court's] own lights.'" *Holder v. State*, 595 S.W.3d 691, 697 (Tex. Crim. App. 2020) (quoting *Olson v. State*, 484 S.W.2d 756, 762 (Tex. Crim. App. 1969)). Fourth Amendment precedent is relevant to interpreting section 9 only when "the Supreme Court's reasoning makes more sense than the alternatives." *Id.* at 698.

8

warrant is requested." Tex. Code Crim. Proc. art. 18.01(b). Evidence obtained in violation of either provision may not be admitted during a criminal trial under Texas's exclusionary rule. *See id.* art. 38.23(a). Although "certain types of procedural irregularities may not affect the validity of a search warrant[,] . . . the oath requirement is essential." *Wheeler v. State*, 616 S.W.3d 858, 864 (Tex. Crim. App. 2021). In determining whether an officer swore to an affidavit, we may consider evidence outside its "four corners." *Smith v. State*, 207 S.W.3d 787, 794 (Tex. Crim. App. 2006).

An officer's failure to swear to the facts in her affidavit "renders defective any search warrant issued on the basis of the unsworn probable-cause affidavit." *Wheeler*, 616 S.W.3d at 864. To "swear" means to "take an oath" or "administer an oath to (a person)." *Swear*, Black's Law Dictionary (12th ed. 2024); *see Ex parte Bornhop*, 654 S.W.3d 195, 202 n.5 (Tex. App.—Austin 2022, no pet.); *see also* Tex. Code Crim. Proc. art. 3.01 ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined."). "An oath is any form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully." *Wheeler*, 616 S.W.3d at 864 (quoting *Vaughn*, 177 S.W.2d at 60).[6] While an affidavit "consists of a statement of fact, which is sworn to as the truth," an oath is "a pledge." *Id.* (citing *Vaughn*, 177 S.W.2d at 60); *cf. Smith*, 207 S.W.3d at 789–90 ("The Code of Criminal Procedure makes it

---

[6] The Court of Criminal Appeals has yet to define "affirmation" as used in article 18.01(b). Federal law distinguishes an oath from an affirmation by understanding the former to include a "reference to God or a revered person or thing." *United States v. Bueno-Vargas*, 383 F.3d 1104, 1110 (9th Cir. 2004); *compare Oath*, Black's Law Dictionary (12th ed. 2024) (defining "oath" as usually "incorporating a swearing to God or to some other revered person or thing"), *with Affirmation*, Black's Law Dictionary (12th ed. 2024) ("A solemn pledge equivalent to an oath but without reference to a supreme being or to swearing"). That distinction appears to be absent from the definition given in *Vaughn*. Thus, for purposes of this opinion, the terms may be used interchangeably.

clear that an affiant must swear that he has knowledge of the facts within his written affidavit and that those facts establish probable cause." (citing Tex. Code Crim. Proc. art. 18.01(b)).

The Court of Criminal Appeals has explained that swearing an oath or affirmation is not the same as merely signing an affidavit. *See Smith*, 207 S.W.3d at 790–91 (stating that "the affiant's signature" is "not an oath itself"). "Although the affiant's signature on an affidavit serves as an important memorialization of the officer's act of swearing before the magistrate, it is that act of swearing, not the signature itself, that is essential." *Id.* at 792.

In determining the existence of a sworn oath, the Court has emphasized the questions of whether the affiant was impressed with the magnitude of the act and whether the swearing occurred with sufficient solemnity and gravity. *See Wheeler*, 616 S.W.3d at 864 (declaring that it is "not too much to ask that the officer swear before another that he or she is telling the truth" before "asking that the government be allowed to invade someone's constitutional right to privacy"). Requiring a sworn affidavit "serves two important functions: to solemnize and to memorialize"; the requirement "'impress[es] upon the swearing individual an appropriate sense of obligation to tell the truth.'" *Clay v. State*, 391 S.W.3d 94, 99–100 (Tex. Crim. App. 2013) (quoting Wayne R. LaFave, 2 *Search and Seizure: A Treatise on the Fourth Amendment* § 4.3(e), at 521 (4th ed. 2004)). Elsewhere, the Court has described the purpose of an oath as "call[ing] upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility." *Smith*, 207 S.W.3d at 790. "When an individual swears under oath, society's expectation of truthfulness increases and the legal consequences for untruthfulness—prosecution for perjury, for example—may be severe." *Id.*

We disagree with the State's assertion that *Vaughn* established subjection to criminal liability for perjury as a "test" for finding the existence of a sworn oath. The Court of

Criminal Appeals stated only that "[a] *reasonable* test to be applied *in the instant case* would be to ascertain whether or not a charge of perjury might have been predicated thereon, in the event statements contained in the affidavit were false." *See* 177 S.W.2d at 60 (emphasis added). Regardless, the State's proposed test merely shifts the same question to a different statute; the perjury statute still requires that the perjurer make a false statement "under oath" or "swear[] to the truth of a false statement." Tex. Penal Code § 37.02(a)(1). Moreover, the Court's explanation of the "rule" in perjury cases previews the Court's later focus on the solemnity and gravity of the swearing:

> In perjury cases, there is a valid oath sufficient to form the basis of a charge of perjury when there is some form of an unequivocal and present act, in the presence of the officer authorized to administer the oath, whereby the affiant consciously takes on himself the obligation of an oath.

*Vaughn*, 177 S.W.2d at 60.

*Vaughn* is also distinguishable from the present case. The Court found that the following facts were sufficient for the trial court to conclude that an affidavit was sworn:

> Under these facts, it is made to appear: (a) that the witness himself prepared the affidavit and knew the contents thereof; (b) that he asserted to the justice of the peace that the facts set forth in the affidavit were true; (c) that the affidavit was signed by the witness in the presence of the justice of the peace, who was authorized to swear him thereto; and (d) that, at the time the witness so signed the affidavit, he understood that he was under oath.

*Id.*

Here, by contrast, there was affirmative evidence at the suppression hearing that the affidavit was not made under oath or affirmation and that Officer Lima did not swear to the truth of its contents. *See State v. Hodges*, 595 S.W.3d 303, 307 (Tex. App.—Amarillo 2020, pet.

11

ref'd) (stating that officer's testimony that "no one had administered any oath" suggested that "he somehow placed himself under oath" and noting that "the officer did not testify about the content of the supposed oath he purportedly operated under" or "that the oath obligated him to acknowledge the truthfulness of what he said in the affidavit"). Both Officer Lima and Officer Roy testified that Officer Lima was never placed under oath; Officer Lima further testified that no one asked her if the affidavit's facts were true and correct. Although the State underscores both officers' testimony regarding their subjective understanding of what Officer Lima's signature meant, the trial judge in a suppression hearing is "the sole trier of fact and judge of the weight and credibility of the evidence." *State v. Mendoza*, 365 S.W.3d 666, 669 (Tex. Crim. App. 2012). We must show almost complete deference to the trial court's implicit credibility determinations that are supported by record, and a reasonable trial judge could have chosen to believe only the testimony that the affidavit was unsworn and was not made under oath. *See Ramirez-Tamayo*, 537 S.W.3d at 35–36.

Next, rather than sign the affidavit in the presence of a magistrate judge or justice of the peace, Officer Lima signed it while on the phone with Officer Roy, her fellow officer. Although there is there is no requirement that an oath or affirmation be sworn in person, the Court of Criminal Appeals has noted that many states attempt to "maximize the solemnizing efficacy of the telephonic oath to compensate for the absence of face-to-face administration." *Clay*, 391 S.W.3d at 103. The Court has explained that mandating that an oath be made "before" another serves the purpose of "convey[ing] the solemnity and critical nature of being truthful." *Wheeler*, 616 S.W.3d at 864. When an affiant does not swear in person, "sufficient care" must be taken "to preserve the same or an equivalent solemnizing function to that which corporal presence accomplishes." *Clay*, 391 S.W.3d at 103.

12

Having viewed the conversation between Officer Lima and Officer Roy, as recorded by Officer Lima's body-cam video, the trial court could reasonably have concluded that no oath or affirmation was sworn and that the circumstances surrounding Officer Lima's signing of the affidavit lacked the necessary solemnity and gravity and failed to call upon her "sense of moral duty to tell the truth" or to instill in her "a sense of seriousness and responsibility." *Smith*, 207 S.W.3d at 790. As acknowledged in Officer Lima's testimony, the conversation largely concerned her not understanding where to sign the affidavit and, by extension, the jurat's purpose. "Forgetfulness or carelessness in the formalities of an affidavit may well indicate to either the issuing magistrate or the reviewing court that the officer is forgetful or careless in his factual statements as well." *Id.* at 793. The State points to Officer Roy's telling Officer Lima to sign the affidavit because "you're swearing to it." Yet that statement evinces no understanding of the act's import by Officer Lima herself; indeed, rather than affirm that she was swearing to the affidavit's facts, Officer Lima then mistakenly asserted that she had to sign the jurat. Officer Roy corrected her in a casual and offhand manner: "'Signature of officer' and then 'subscribed and sworn to before me by' blah, blah, blah on this date, and then I notarize it." Yet Officer Lima's concern was still with who was to sign and not the meaning or weight of the signature.

This Court's decision in *Nix*, in which the State argues we "held that a written oath made under substantially similar circumstances qualified as an oath," is distinguishable.[7] Like this case, *Nix* involved a blood-draw performed pursuant to a search warrant as part of a DWI investigation. *See* 2023 WL 2668008, at *2. The affiant-officer drove the defendant to a hospital and asked for a notary, who signed the affidavit's jurat below the officer's signature,

---

[7] *Nix* was unpublished, and we are therefore not bound by it. *See* Tex. R. App. P. 47.7(a).

while the two made small talk. *Id.* at \*1–2. The officer then sent the affidavit to the trial court judge, who issued the warrant. *Id.* at \*2. Both the affidavit and warrant contained boilerplate language substantively identical to that in the present case. *See id.* at \*5. Reversing the trial court's order granting the defendant's motion to suppress, we determined that the boilerplate language, together with the following facts, was sufficient evidence of an oath:

> [A]t the evidentiary hearing before the visiting judge, Deputy Pinilla testified that he: signed the affidavit in front of a notary public, was taught about the importance of being truthful when drafting an affidavit, and believed he was swearing to the statements contained in his affidavit when he signed it in front of the notary public. There was also an audio recording entered into evidence of Deputy Pinilla seeking the assistance of a notary to sign the affidavit.

*Id.* at \*6.

As noted above and unlike *Nix*, Officer Lima affirmatively testified during the suppression hearing that she was not placed under oath or asked if her affidavit's contents were true and correct. Importantly, Officer Roy and Officer Lima did not just engage in small talk; rather, the trial judge could have reasonably concluded from their conversation that Officer Lima lacked familiarity with probable-cause affidavits and did not understand the purpose or significance of her signature and the jurat and that she therefore did not intend to bind herself "in conscience to perform an act faithfully and truthfully" or to swear to the truth of her statements. *See Wheeler*, 616 S.W.3d at 864. As noted above, her signature was not the act of swearing, *see Smith*, 207 S.W.3d at 792, and the trial judge could have found that the remainder of the evidence failed to show that she was impressed with "the solemnity and critical nature of being truthful," *see Wheeler*, 616 S.W.3d at 864. To the extent that other testimony during the suppression may have contradicted such a finding, credibility is a matter for the trial court, *Smith*, 207 S.W.3d at 793, and we must view the evidence in the light most favorable to the

court's ruling, assuming that it made all implicit findings of fact that are supported by the record, *Ramirez-Tamayo*, 537 S.W.3d at 35–36; *see Hodges*, 595 S.W.3d at 307 ("[R]esolution of those credibility issues fell within the bailiwick of the trial court. And, in the trial court granting the motion to suppress, it would be appropriate for us to imply that the trial court doubted the veracity of the officers' testimony.").

For these reasons, the trial court would not have abused its discretion by concluding that Officer Lima's affidavit was unsworn in violation of article 18.01(b). We overrule the State's first issue.

## II. Whether Officer Lima Acted in Objective Good Faith

When a search warrant issues despite an officer's failure to swear to the facts of her affidavit, "the question becomes whether the good-faith exception applies to allow the admissibility of the improperly-obtained evidence." *Wheeler*, 616 S.W.3d at 864–65. The good-faith exception to Texas's exclusionary rule is codified in article 38.23(b) of the Code of Criminal Procedure, which provides that the exception applies if "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." Tex. Code Crim. Proc. art. 38.23(b).

"The exception plainly requires objective, rather than subjective, good-faith reliance upon a search warrant." *Wheeler*, 616 S.W.3d at 863. In other words, "it is the *objective* reasonableness of the officer's conduct, based on the facts and circumstances he knows at the time, that dictates whether the statutory good-faith exception applies. The officer's *subjective* intentions or beliefs about whether his conduct was lawful or reasonable are irrelevant under the statutory terms." *Id.* at 866 (citing *McClintock v. State*, 541 S.W.3d 63, 73 (Tex. Crim.

App. 2017)).  The question is whether a reasonable police officer in Officer Lima's position would have believed the warrant was valid.  *See id.* at 865.

We conclude that a reasonable officer would have known that the search warrant in this case was invalid because a sworn affidavit was not filed, and there was no oath or affirmation.  Tex. Const. art. I, § 9; Tex. Code Crim. Proc. art. 18.01(b).  No oath or affirmation was verbally administered.  Nowhere—either in the affidavit itself or elsewhere—did Officer Lima explicitly swear to the truth of the affidavit's contents.  Although she signed the affidavit, her signature is "not an oath itself," and it is "that act of swearing, not the signature itself, that is essential."  *See Smith*, 207 S.W.3d at 790–92.  Other than the boilerplate language in the affidavit and warrant, the only objective evidence to which the State has directed us is a single statement from Officer Roy during an informal conversation that directed Officer Lima where to sign.  Yet telling an officer where to sign an affidavit is not the same as placing her under oath or asking her to confirm the truth of her statements, and there is nothing in the body-cam video to indicate that Officer Lima understood Officer Roy's instruction to be the latter.  *See Hodges*, 595 S.W.3d at 306 (concluding that affiant was not sworn or placed under oath when another officer "merely directed him to sign the affidavit").

The Court of Criminal Appeals has recognized that "no objectively-reasonable officer would execute a search warrant knowing that it was procured through an unsworn probable-cause affidavit."  *Wheeler*, 616 S.W.3d at 863.  Accordingly, the trial court would not have abused its discretion by concluding that the good-faith exception did not apply and that any evidence obtained as a result of the search warrant was inadmissible under the exclusionary rule.  *See* Tex. Code Crim. Proc. art. 38.23.  We overrule the State's second issue.

16

**CONCLUSION**

Having overruled both of the State's issues, we affirm the trial court's order granting Chavez's motion to suppress.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   October 17, 2025

Publish